William W. Palmer, Esq. (SBN 146404)
PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218
Los Angeles, California 90024
Telephone: (310) 984-5074
Email: wpalmer@palmercorp.com

*Attorneys for Paul R. Hashim, Karl A. Whitty, and Class Members*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

PAUL R. HASHIM; KARL A. WHITTY; on behalf of themselves and other persons similarly situated,

Plaintiffs,

vs.

MALIA M. COHEN, in her official capacity as CHIEF FISCAL OFFICER, STATE CONTROLLER OF THE STATE OF CALIFORNIA, and as TRUSTEE OF THE UNCLAIMED PROPERTY FUND; and VERUS ANALYTICS, LLC,

Defendants.

Case No.:

CLASS ACTION COMPLAINT FOR:

1. Due Process Clause
2. Takings Clause
3. Breach of Fiduciary Duty
4. Negligence
5. Fraud

DEMAND FOR JURY TRIAL

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

Plaintiffs Paul R. Hashim ("Hashim") and Karl A. Whitty ("Whitty") (collectively, "Plaintiffs") bring this proposed class action on behalf of themselves and all others similarly situated (the putative "Class") against defendant Malia M. Cohen, in her official capacity as Chief Fiscal Officer, Controller for the State of California and as Trustee of the Unclaimed Property Fund ("Controller"); and Verus Analytics, LLC ("Verus") (collectively, "Defendants") and allege as follows:

**JURISDICTION AND VENUE**

1. This lawsuit is brought pursuant to the following provisions of the United States Constitution: (a) Fourteenth Amendment, Section 1 (Due Process), and (b) the Fifth Amendment, Article I, Section 10 (Takings). This action is also brought pursuant to 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2. A substantial part of the events or omissions giving rise to the claims here at issue occurred in this District. A substantial portion, if not all, of the property seized by the Controller is situated herein. Therefore, venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

**PARTIES**

3. Plaintiff Paul Hashim resides in the State of Texas and operates a company named U.S. Claims Services, Inc., a California corporation with its principal place of business in Bakersfield, California. Plaintiff knows that he is

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

entitled both as an individual and through his corporation to amounts held by the Controller in sums less than $50.00 and other property discussed herein.

4. Plaintiff Karl Whitty resides in the United Kingdom and has no nexus to the State of California; however, he had his property and the property of other citizens who are similarly situated was unlawfully seized by state governments in the United States. Mr. Whitty has submitted the requisite claim, received payment, and is recognized by the State of California as the rightful owner to seek the return of the seized property belonging to him held in a Charles Schwab account in the United Kingdom. In order to effectuate the unauthorized, unnoticed stock transfer, Defendants falsified his address from "Cardiff, United Kingdon CF5 5QE" to "Cardiff, CA 00000."

5. Defendant Malia M. Cohen is the Controller for the State of California and is the custodian of the Unclaimed Property Fund and is responsible for the enforcement and administration of the California's Unclaimed Property Law, California Code of Civil Procedure §§ 1300, *et seq*. ("UPL" or "Unclaimed Property Law"). The Controller's office is located at 888 South Figueroa Street, Suite 2050, Los Angeles, California.

6. Defendant Verus Analytics, LLC provides administrative services as a contingent fee "Auditor" to the Controller for the State of California and other states in connection with the UPL. On information and belief, Verus is incorporated in

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

Connecticut and has its principal place of business at 16211 N. Scottsdale Rd., No. A6A-601, Scottsdale, Arizona 85254.

## GENERAL ALLEGATIONS

### A. Introduction

7. This proposed class action challenges, as applied and facially, the constitutionality of California's escheatment scheme enacted in the California's Unclaimed Property Law, California Code of Civil Procedure §§ 1300, *et seq*. (hereafter, "UPL" or "Unclaimed Property Law"). The Complaint does not seek damages or any payment from the budget or "fisc" as it is sometimes called for the State of California. Under the scheme described in the following pages, the Controller confiscates security deposits, uncashed money orders, unused insurance benefits, idle shares of stock, and even safe-deposit boxes and bank accounts if those assets lie "dormant" - i.e., with no account activity by the rightful owner - for three years. Of course, a "buy-and-hold" investment strategy will often result in a substantial period of inactivity and thus trigger a finding of "dormancy" under this scheme.

8. The purpose of the UPL is twofold. The *primary* purpose of the UPL is to "reunite" lost property owners with their lost property. *See Azure v I-Flow* (2009) 46 Cal. 4th 1323, 1328 (*citing Harris v. Westly* (2004) 116 Cal. App. 4th 214, 219; *quoting Douglas Aircraft Co. v. Cranston*, 58 Cal. 2d 462, 463 (1962); *Bank of*

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

*America v. Cory* (1985) 164 Cal. App. 3d 66, 74. The *secondary* purpose of the UPL is to allow the public, rather than a private business or "Holder," in the parlance of the UPL, to benefit from the use of the property while its Owner is sought. (*Ibid*.).

9. However, the UPL operates to frustrate this avowed statutory purpose. Under the UPL, the Controller misappropriates, sells and destroys the supposedly "unclaimed" property of purportedly "unknown" persons without any prior notice in many instances, auctions it or otherwise sells it off, and retains the proceeds for the State of California's own use. The property in question includes stock, contents of safe deposit boxes, retirement accounts, wages, refunds, deposits, gift cards, and many other forms of property. The UPL deems property to be "unclaimed" following a short period of inactivity and fails to provide constitutionally adequate notice – indeed, no notice at all in most instances – before the Controller takes and permanently destroys the property.

10. The UPL is generally considered to be one of the nation's most aggressive unclaimed property statutes. The Council on State Taxation ("COST") graded all 50 states based on the aggressiveness of their unclaimed property laws. California, along with New Jersey and Louisiana, received the COST's ***lowest*** grade: a "D."[1]

[1] https://www.cost.org/globalassets/cost/state-tax-resources-pdf-pages/cost-studies-articles-reports/cost-scorecard--the-best-and-worst-of-state-unclaimed-property-laws-october-2013.pdf.

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

11. Currently, the Controller holds over $15 billion in "unclaimed" property held in 84 million accounts.[2] This property is owned by such purportedly "lost and unknown" entertainers, politicians athletes, and public personalities like the Speaker of the United States House of Representatives Nancy Pelosi (Property ID Nos. 015048011 and 012390561), the former Governor of the State of California, Arnold Schwarzenegger (Property ID No. 964627703), Vladimir Putin (Property ID No. 986208586), Presidents George W. Bush (Property ID No. 956318038) and Barack Obama (Property ID No. 969500727), and one member of the California Supreme Court, among many other "lost and unknown" people like Plaintiffs. According to the Controller Malia Cohen, she cannot locate these citizens and does not know who they are in order to return their property to them as is the primary purpose of the law.

12. In fact, the Controller holds more than 76 million accounts (about 1 in 3 California residents have an account with unclaimed funds)[3] as unclaimed property who are listed as "lost and unknown" to the Controller, though virtually every one of these citizens is well known to the State of California for purposes of paying state taxes, motor vehicle registration, property taxes, voting, census registration, or even to pay a $15.00 parking ticket and the Controller is the Chief Fiscal Officer with

[2]https://www.sco.ca.gov/eo_pressrel_27367.html
[3]https://www.cbsnews.com/news/california-unclaimed-property-state-owes-charities-money/

access to all state records and databases. The Controller cannot locate any of these California citizens when it is time to notify them prior to the seizure of their private property under a statutory scheme that requires the owners must be "lost and unknown" to the Controller as a precondition for application of the statutory scheme and the seizure and sale of the private property. (*See* Cal. Code Civ. Proc. § 1300 [entitled, "Definitions"].[4])

---

[4] Section 1300 states in relevant part as follows:
"For the purposes of this title, the following definitions shall apply:
(a) "Property," unless specifically qualified, includes all classes of property, real, personal and mixed. [Footnote continues to next page… .]
(b) "Unclaimed property," unless specifically qualified, means all property (1) which is unclaimed, abandoned, escheated, permanently escheated, or distributed to the state, or (2) which, under any provision of law, will become unclaimed, abandoned, escheated, permanently escheated, or distributed to the state, or (3) to the possession of which the state is or will become entitled, if not claimed by the person or persons entitled thereto within the time allowed by law, whether or not there has been a judicial determination that such property is unclaimed, abandoned, escheated, permanently escheated, or distributed to the state.
(c) "Escheat," unless specifically qualified, means the vesting in the state of title to property the whereabouts of whose owner is unknown or whose owner is unknown or which a known owner has refused to accept, whether by judicial determination or by operation of law, subject to the right of claimants to appear and claim the escheated property or any portion thereof. When used in reference to the law of another state, "escheat" includes the transfer to the state of the right to the custody of such property.

* * *

(e) "Controller" means the State Controller.

* * *

(g) "Domicile," in the case of a corporation, refers to the place where the corporation is incorporated."

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

13. Plaintiff Hashim is a United States citizen and resident of Texas who received no notice at all before his property was unconstitutionally seized and taken by the Controller under the UPL. The UPL contains no provision for direct mail notice or individualized notice whatsoever to overseas property owners like Mr. Hashim alerting him that his property has been deemed "unclaimed" and is subject to seizure by the State.

14. Plaintiff Whitty is a citizen and resident of the United Kingdom, which has its own unclaimed property law and website, and who, like Hashim (who resides in the U.S.), never received any notice at all before his property was unconstitutionally seized and taken by the Controller under the UPL. Mr. Whitty had no intention of "abandoning" his personal property to a province in a foreign country like California, which is thousands of miles from where he lives. And was seized without prior constitutional and statutory notification to Mr. Whitty of the seizure and sale before or after the act occurred. No notice was mailed to Plaintiff Whitty and his address was altered and falsified by Verus to shift his address from "Cardiff, United Kingdon CF5 5QE" to "Cardiff, CA 00000." The same has been done to all foreign shareholders and a fictional "00000" zip code was added to their false "CA" addresses and those of other states.

15. In addition, the UPL provides for no prior direct mail or any other form of individualized notice to property owners in connection with the State's seizure of

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

their property where the property in question is valued at less than $50. Amounts less than $50 comprise 60% of the Unclaimed Property Fund.[5]

16. Because the UPL is unconstitutional both on its face and as applied, Plaintiff brings this action to secure prospective declaratory and injunctive relief, including injunctive relief requiring Defendant to return the property belonging to each Plaintiff and Class Member or otherwise put them in the same position monetarily as they would have occupied if the property had not been unconstitutionally seized and taken by the Controller as required by the Fifth Amendment.

17. Plaintiffs also sue Verus Analytics, LLC ("Verus"), the private auditor that provides administrative services to the State of California and other states in connection with the UPL. Verus has a strong profit motive to identify as much "unclaimed" property as possible and to provide as little notice as possible to property owners under the UPL, because Verus receives 10% fee for all successfully seized property.

///

///

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

[5] *See*, *e.g.*, Taylor, Mac, Unclaimed Property: Rethinking the State's Lost & Found Program, LEGISLATIVE ANALYST'S OFFICE (Feb. 10, 2015), at p. 6, https://lao.ca.gov/reports/2015/finance/Unclaimed-Property/unclaimed-property-021015.pdf

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

**B. <u>Statutory Background of California's Unclaimed Property Law</u>**

18. Traditionally, unclaimed property or "escheatment" statutory schemes applied to real property and tangible personal property belonging to persons who died intestate with no descendent, relative, or other valid claimant to the estate. In these situations, the property truly was unclaimed and ownerless (*bona vacantia*).

19. It was not until the mid-Twentieth Century that states such as California slowly began to expand unclaimed property laws to include certain types of intangible property, including, in particular, unclaimed bank deposits and brokerage accounts. State governments soon realized that unclaimed intangible property could represent a significant source of revenue for the state. The unnoticed seizures of private property from citizens around the world no comprises the fifth largest "revenue" stream for the State of California behind taxes.[6]

20. The UPL departs from the historic function of unclaimed property laws. Instead of being limited to property owned by persons who have died intestate or disappeared, the statute applies to any property meeting the technical definition of "abandonment." The Act does not use the traditional understanding of

---

[6] *See*, *e.g.*, Taylor, Mac, Unclaimed Property: Rethinking the State's Lost & Found Program, LEGISLATIVE ANALYST'S OFFICE (Feb. 10, 2015), at pp. 16–17, https://lao.ca.gov/reports/2015/finance/Unclaimed-Property/unclaimed-property-021015.pdf ("While constituting less than one-half of 1 percent of General Fund revenue and transfers, revenue from the unclaimed property program is still the fifth largest source of General Fund revenue.")

"abandonment" – *i.e.,* the knowing and voluntary "relinquishing of a right or interest of never reclaiming it." Black's Law Dictionary (12th ed. 2024). Moreover, the UPL departs from its avowed statutory purpose of seeking to reunite owners with their lost property.

21. Instead, no one is "reunited" with their property, instead, the property is deemed "unclaimed" under the UPL according to dormancy thresholds specified in the statute. As a general rule, property is presumed "unclaimed" if it is dormant for one to three years with no activity by the owner. *See* Statutory Notes, 2007 Main Volume, Cal. Code Civ. Proc. § 1513; *see also* Stats. 1976, c. 648, § 1 & c. 1214 § 1; Stats. 1988, c. 286 § 2; Stats. 1990, c. 450 (S.B. 57), § 4.

22. California uses a short, three-year "dormancy" period to determine whether a securities account may be deemed dormant and, therefore, "unclaimed." *Id*. If an account is inactive for three years – for example, if a customer uses a savings or stock account as a "rainy day" fund or retirement account, just as Mr. Whitty did here, and makes no deposits or withdrawals for three years – then the account can be listed as "unclaimed" and seized and sold as revenue by the Controller and her privately commissioned contract auditors. When the UPL was

///

///

///

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

enacted in 1959, the dormancy period was fifteen years. In 1976, it was reduced to seven (7) years; in 1988 to five (5) years, and in 1990 to three (3) years.[7].

23. The UPL requires that financial institutions and other entities holding so-called "unclaimed" property transfer it to the Controller. Such property includes supposedly "dormant" stock and bond accounts, savings accounts, uncashed payroll checks, unredeemed customer or vendor credits, and unused gift cards or gift certificates. The UPL by its plain language applies only to citizens of other "states" and the State of California. The UPL instead uses language like "another state," "other state," "this state," and "state of last known address," in C.C.P. §§ 1504, 1510, 1511, 1540, 1542, 1561, 1573–1575. No where in the UPL does its reach extend to citizens who reside in other "countries."

24. Telephone calls or verbal contact with an owner do not by themselves prevent property from being deemed "unclaimed." Nor does internal activity such as service charges, crediting of interest and dividends, automatic dividend reinvestment, and automatic withdrawals prevent property from being deemed unclaimed.

25. As part of the State's relentless campaign to fill its coffers with "unclaimed" property, the Act contains strong penalties coercing property holders,

---

[7] A later amendment extended the dormancy period back to five years only for "any other written instrument on which a banking or financial organization is directly liable," such as a certified check. Stats. 1990, c. 1069 (S.B. 1186), § 1.



PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

including banks and other entities, to report as much "unclaimed" property as possible to the Controller. Such entities are required, subject to severe penalties, to submit "holder reports" annually to the Controller listing all "unclaimed" property they hold. Such reports must include details on the property and remittance to the Controller of the escheated property.

26. Starting in the late 1990s and continuing into the early 2000s, California and other States dramatically increased their enforcement and property seizures. The Controller's office ceased all notice to property owners based on "budget constraints." *See Taylor v. Westly*, 488 F.3d 1197, 1200-02 (9th Cir. 2007) ("*Taylor II*"); see also internal Memorandum detailing unnoticed seizures of $1 Billion in Berkshire Hathaway stock from shareholders with current market sale price of $728,540.06 per share but sold for $4,177.00 to $32,199.00 per share by the Controller, attached as Exhibit A. This surge in audit activity was largely due to the proliferation of private contract audit firms compensated by the states on a contingent-fee basis – typically, 10 to 15 percent of any unclaimed property identified in the audit. Such a fee structure provides a profit incentive to such firms to take aggressive positions in these audits. Further, these contingent-fee audit firms are often staffed by former accountants and consultants with far greater expertise in unclaimed property matters than their client states, which led many states to defer almost entirely to the positions taken by these firms in audits.

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

27. Defendant Verus is one of the contingent fee contract Auditors for the State of California. As alleged herein, Verus has a strong profit motive to identify as much "unclaimed" property as possible and to provide as little notice as possible to property owners under the UPL. Verus receives a bounty on each piece of seized property yet also makes the determination on what property is ripe for seizure under its interpretation of the UPL.

28. The use of contingent fee audits (which, of course, creates financial incentives for aggressive and unconstitutional seizures of property) is inconsistent with the stated purpose of unclaimed property laws, which is to return property to its rightful owner. Thus, instead of protecting the rights of the "true owners," the Act represents a new form of escheatment that views unclaimed property law as a revenue generator for the State of California.

29. As explained below, the UPL combines these aggressive definitions of "unclaimed" and "unknown" with constitutionally inadequate or, more accurately, notice at all to the true owners (which has the effect of further increasing state revenue).

**C. <u>UPL's Constitutionally Inadequate Pre-Deprivation Notice Procedures</u>**

30. The UPL provides different amounts of notice depending on the commercial value of the property and where the property owner is located.

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

31. For property in excess of $50, the holder of the property must send, by mail, a written notice to the apparent owner at their last known address informing them that the holder will be turning over their property to the State of California. *See* Cal. Code Civ. Proc. §§ 1510 through 1521 (specific requirements for escheat of property); 1513.5 (actual notice required by Holder); 1520 (Holder's notice obligations); 1530 (affidavit required of Holder). This written notice must be sent at least 60 days before (but not more than 120 days before) filing the unclaimed property report to the State. *Id.*

32. The UPL provides for individualized notice in only one form, a letter posted by mail. *See* Cal. Code Civ. Proc. § 1531. But the United States Postal Service only offers certified mail within the United States, apart from service to U.S. military and diplomatic installations. Thus, the UPL contain no individualized notice provision for individuals with addresses located outside the United States. There is no provision in the UPL providing for notice to property owners who do not live in the United States.

33. For property valued at $100 or more, Section 1531(a) of the UPL provides that, "[w]ithin one year after payment or delivery of escheated property," "the Controller shall cause a notice to be published in a manner that the Controller determines to be reasonable, which may include, but not be limited to, newspapers, Internet Web sites, radio, television, or other media." (§ 1531(a)). The Controller

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

has implemented this requirement through a practice of generic, inconspicuous 3" x 5" "block" publication notices in newspapers that do not provide actual notice to the owners that their specific property has been appropriated by the State. The generic "advertisements" are addressed to no one in particular just the general public, and are often published on dates calculated to reduce readership, *e.g.*, Thanksgiving Day. It is overwhelmingly likely that only a miniscule fraction of affected property owners will happen upon these notices. The vast majority would have no notice that their property rights have been lost. More important, three panels of the Ninth Circuit have explained to the Controller that generic block advertisements do not constitute notice under the United States Constitution. *See Suever v. Connell*, 439 F.3d 1142 (9th Cir. 2006) ("*Suever I*"); *Taylor II*; *Maron v. Chief Fin. Officer of Fla.*, 136 F.4th 1322, 1333–34 (11th Cir. 2025).

34. Moreover, a resident of the United Kingdom (like Plaintiff Whitty) would have no access to local California newspapers and no reason to look there to review publication notice.

35. For "unclaimed" property valued at less than $50, the UPL does not require banks and other financial services institutions to provide any notice at all to its rightful owner before transferring it to the Controller.[8]

[8] Call Kurtis Investigates: *State Can Keep Your Unclaimed Money Under Bill Meant To Close Loophole.* http://sacramento.cbslocal.com/2013/06/06/call-kurtis-





PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

36. "Unclaimed" property is then seized by the auditors under the supervision of the Controller, who acts as property custodian. Property holders (such as financial services institutions) must transfer cash via checks or electronic funds transfers.

**D. <u>UPL's Constitutionally Inadequate Post-Deprivation Notice</u>**

37. After property is transferred to the Controller, the UPL continues to deny owners any individualized notice, even after they have been deprived of their property. The Controller does not search readily and publicly available databases, like DMV records, voter records, etc. *See Jones v. Flowers*, 547 U.S. 220 (2006) (citing *Plemons v. Gale*, 396 F.3d 569 (4th Cir. 2005). Such property may be transferred to the Controller without any individualized or published notice to its rightful owners, including international property owners whose addresses have been falsified by Defendant Verus' reporting standards.

38. Under the UPL, "the state assumes custody and responsibility for the safekeeping of the property." *See* Cal. Code Civ. Proc. §§ 1300 (definitions); 1510 through 1521 (specific requirements for escheat of property); 1513.5 (actual notice required by Holder); 1520 (Holder's notice obligations); 1530 (affidavit required of Holder); 1531 (notice required by Controller). The Controller manages an

investigates-state-can-keep-your-unclaimed-money-under-bill-meant-to-close-loophole/#.UbJVXKCsoJE.email



PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

unclaimed property trust fund, which under the UPL is "administered and invested by the State Treasurer, and used to pay claims duly presented and allowed and all expenses and costs incurred by the State of New Jersey." N.J. Stat. Ann. § 46:30B-74(a).

39. After the seizure, California places the owner's name and last known address on a searchable Internet website (https://www.sco.ca.gov/search_upd.html) that property owners may visit if they know it. However, many property owners (like Plaintiff Whitty) are unaware of the website and their addresses have been manipulated and falsified by the Controller and her Auditor(s). And the UPL does not require the State to post specifics on the value of the property on the website (or even a range of values).

40. The website fails to provide any constitutionally required prior notice before property is seized. Further, such an approach to notice shifts the burden from the government to the owners to ferret out the information on their property after it has been seized and destroyed by the Controller. Indeed, it defies common sense to expect international or out-of-state residents to search a California website when they and their property have no nexus with California.

41. In theory, claimants may submit claim forms seeking the return of certain types of property by mail or online. However, it is difficult or impossible for owners to reclaim their property because the public website is broken and

unsearchable, hides key identifying information from the owner, and the Controller fails to verify owner information with the other State of California databases.

42. It is especially difficult to reclaim property if the property if the address is falsified as in the case of Karl Whitty, is listed with last name first or if the name is misspelled or abbreviated or if a nickname is used (such as “Bill” for “William” or “Dave” for “David”), or if the property is listed by the name of the institution holding it, rather than the individual owner. Or when Defendant Verus falsifies the addresses of international property owners with their addresses deemed California with “00000” zip codes.

43. Further, the Controller may reject claims if, for example, Defendant Controller determines the supporting documentation inadequate based on the unpublished or verbal claims process. There are no published regulations as required by the Administrative Procedures Act California Government Code, section 11340 *et seq*. (“APA”); *Tidewater Marine Western v. Bradshaw* (1996) 14 Cal. 4th 557 (“Tidewater”). Moreover, with no notice, many individuals are unaware that their property has been transferred to the Controller or of the procedure for seeking its return. Accordingly, property owners are highly unlikely to avail themselves of this procedure and, in fact, only a small portion of seized property is ever returned. Finally, as a practical matter, the private property is sold or destroyed <u>before</u> this limited information is posted to the website.

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

44. After providing totally inadequate notice before property is seized, the Controller shifts the burden of conveying constitutional notice from the government to the private citizen, who must ferret out his own property information by running queries on the Controller's broken (outdated) government website. Common sense dictates that if property owners in the United Kingdom (such as Plaintiff Whitty), Germany, Hong Kong, Scotland, Singapore, etc., are not told ahead of time that the California Controller is taking their property, then they would have no reason to search a broken website database in California or to file a claim for the return of their seized, sold, and destroyed property.

45. As the Controller has decreased the amount spent on notices, the State was simultaneously spending increasingly large sums of money on private auditors (such as Defendant Verus) to expand the amount of property seized. Private auditors are paid on a percentage commission, which rises with the rate of seizures. This strategy predictably redounds to the State's financial benefit. The California unnoticed property seizures illustrated by the case at bar, are growing at an exponential rate. As foreshadowed by United Supreme Court Justice Alito's concurrence directed to the Controller's office in *Taylor v. Yee*, 136 S. Ct. 929 (2016), there is clearly little regard for "reuniting" "unknown" owners with their "unclaimed property" prior to its seizure and sale.

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

46. In sum, Plaintiffs are entitled to recover their actual private property (as opposed to damages) with interest and other substantive due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. Voluminous, unallocated private funds are hold in the private Unclaimed Property Fund; indeed, the largest owner of unclaimed property is the United States is "Owner Unknown" because, just like all the citizens owed $50 or less, the Controller fails to list names and simply inserts "Owner Unknown."

47. Having received no notice or Due Process, the law requires just compensation and interest at California's alternative borrowing rate, which is the amount of interest the State avoids when it uses the illegally seized property instead of funds borrowed on the open market. The California Supreme Court further held in *Holt v. Kelly* (1978) 20 Cal. 3d 560, 562 and in *Minsky v. City of Los Angeles* (1974) 11 Cal. 3d 113, 121, that: "A claim for the specific recovery of property has never been considered a claim for money or damages." The Defendants will have this Court and the public believe that having seized vast amounts of private property with no notice at all to the owners, the Controller is now allowed to keep the private property as a free, permanent, no interest loan to the State of California.

**E. Judicial Concerns Regarding Unclaimed Property Laws**

48. The UPL, along with unclaimed property laws in other states, has been trending in the wrong direction for over thirty years because such laws have been

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

greatly expanded in unconstitutional ways to generate revenue for states, at the expense of both owners and putative holders of unclaimed property.

49. In 2016, two Justices of the U.S. Supreme Court – Justices Alito and Thomas – expressed constitutional concern about state unclaimed property laws in a separate opinion concurring in the denial of certiorari in a case presenting the question whether unclaimed property laws "provide[] property owners with constitutionally sufficient notice before escheating their financial assets." *Taylor v. Yee*, 136 S. Ct. at 929, *supra*. These Justices explained that "[t]he Due Process Clause requires States to give adequate notice before seizing private property. When a State is required to give notice, it must do so through processes 'reasonably calculated' to reach the interested party – here, the property owner." *Id.* (citation omitted).

50. In that case, Justices Alito and Thomas explained that because the seizure of private property is no small thing, notification procedures may not be empty rituals: "[P]rocess which is a mere gesture is not due process.' Whether the means and methods employed by a State to notify owners of a pending escheat meet the constitutional floor is an important question." *Id.* (citations omitted). The Justices noted that "[i]n recent years, States have shortened the periods during which property must lie dormant before being labeled abandoned and subject to seizure." *Id.* at 930. The Justices cited New York as an example and observed that it recently

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

shortened its dormancy period from as long as 15 years to merely three years. *Id.* "This trend—combining shortened escheat periods with minimal notification procedures—raises important due process concerns. As advances in technology make it easier and easier to identify and locate property owners, many States appear to be doing less and less to meet their constitutional obligation to provide adequate notice before escheating private property. Cash-strapped States undoubtedly have a real interest in taking advantage of truly unclaimed property to shore up state budgets. But they also have an obligation to return property when its owner can be located. To do that, States must employ notification procedures designed to provide the pre-escheat notice the Constitution requires." *Id.* These Justices concluded that "the constitutionality of current state escheat laws is a question that may merit review in a future case." *Id.*

51. Judge Richard Posner of the Seventh Circuit Court of Appeals described a three-year dormancy period for determining abandonment as "a period so short as to present a serious question whether it is consistent with the requirement in the Fourteenth Amendment that property not be taken without due process of law, implying adequate notice and opportunity to contest." *Cerajeski v. Zoeller*, 735 F.3d 577, 582 (7th Cir. 2013).

52. In *Taylor II*, the Ninth Circuit Court of Appeals held that an injunction should be issued against California's Unclaimed Property law for violations of the

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

U.S. Constitution similar to those alleged in this case. *Id.* at 1200–02. In 2025, a series of supporting cases followed and cited *Taylor II* with approval. *See Garza v. Woods*, 150 F.4th 1118, 1125 (9th Cir. 2025); *Knellinger v. Young*, 134 F.4th 1034, 1044–45 (10th Cir. 2025); *Maron v. Chief Fin. Officer of Fla.*, 136 F.4th 1322, 1333–34, *supra*.

**F. <u>California Seizes Plaintiffs' Property Without Notice and Provides Inadequate Compensation</u>**

53. The loss of Plaintiffs' property in violation of his constitutional rights has caused irreparable harm to Plaintiffs. Specifically, Plaintiffs allege that the Controller violates the Constitution and the UPL by:

(a) Taking custody of any property (i) over which, the Controller does not have jurisdiction like people living in foreign countries or those with falsified addresses or (ii) that is delivered without full satisfaction of all requirements for escheat pursuant to the UPL. *See* Cal. Code Civ. Proc. §§ 1300 (definitions); 1510 through 1521 (specific requirements for escheat of property); 1513.5 (actual notice required by Holder); 1520 (Holder's notice obligations); 1530 (affidavit required of Holder); 1531 (notice required by Controller). Plaintiffs seek an injunction prohibiting the Controller from violating and requiring the Controller to enforce, in full, each and every requirement of the

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

Unclaimed Property Law. *See Taylor v. Betty T. Yee*, 136 S. Ct. 929, *supra* (United States Supreme Court Associate Justices Samuel A. Alito, Jr. and Clarence Thomas explained to this Defendant that: "The Due Process Clause requires States to give adequate notice before seizing private property); *Azure v I-Flow* (2009) 46 Cal. 4th 1323, 1336 (The California Supreme Court explained to the Controller that: "Requiring compliance with the UPL—i.e., ensuring that the owners are in fact unknown and the property is in fact unclaimed—furthers the purpose of protecting unknown owners. Moreover, the state has no legitimate interest in receiving and using property that is not unclaimed"); *see also Bank of America v. Cory*, (1985) 164 Cal. App. 3d 66, 74 ("When considered in total context, the statutory scheme of the UPL compels the Controller to affirmatively take all steps necessary to carry out the purposes of the UPL.").

(b) Property owners (especially international) cannot claim their private property from the custody of the Controller because the Controller does not maintain and list the property owners' names on her "searchable website," i.e., the broken website found at:

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

https://www.seo.ca.gov/upd_lawregs.html. Instead, the Controller maintains publicly that she has no obligation whatsoever to fix the broken website and to properly maintain ownership information, such as properly spelled names and correct addresses, who have no way to reclaim their property from the Controller's custody.[9]

(c) There is no legal claim process in place for the property owners to reclaim their private property and no legal process in place to guide the audits of companies for unclaimed property. Instead, the process is verbal or contained in 300+ pages of forms, notices, bulletins, memos, and "guidelines" that are not published but only maintained solely on the Controller's government website at: https://www.sco.ca.gov/upd_lawregs.html. *See Tidewater Marine Western v. Bradshaw* (1996) 14 Cal 4th 557, 568-577, wherein the California Supreme Court held that an Agency's actions are "void" for failure to adopt written

---

[9] CBS News, Call Kurtis Investigates: State Can Keep Your Unclaimed Money Under Bill Meant To Close Loophole (June 6, 2013): http://sacramento.cbslocal.com/2013/06/06/call- kurtis-investigates-state-can-keep-your-unclaimed-money-under-bill-meant-to-close-loophole/#.UbJVXKCsoJE.email

regulations pursuant to public rulemaking under the Administrative Procedures Act ("APA"), Government Code sections 11340, *et seq*. (Deerings 2026).

(d) The Controller does not provide constitutional notice and due process to property owners prior to seizing the private property which is sold, destroyed, and monetized for use by the California state government. The sad reality is the private Unclaimed Property Fund contains roughly $50,000 because all $15 billion has been loaned, interest free, to the California General Fund.[10] The Unclaimed Property Fund consists of notational accounts that are maintained on a broken website. By the time this property is listed on the Controller's website it is, in virtually every instance, already gone, i.e. the property owner's stock is sold and destroyed. *See Taylor v. Yee*, 136 S. Ct. 929, *supra*, *Jones v. Flowers*, 547 U.S. 220 (2006) (citing *Mullane v. Hanover Bank & Trust Co*., 339 U.S. 306 (1950), *Taylor v. Westly*, 402 F.3d 924 (9th Cir. 2005), reh'g and reh'g

[10] Taylor, Mac, Unclaimed Property: Rethinking the State's Lost & Found Program, LEGISLATIVE ANALYST'S OFFICE (Feb. 10, 2015), at p. 16, https://lao.ca.gov/reports/2015/finance/Unclaimed-Property/unclaimed-property-021015.pdf

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

en banc den. (May 13, 2005) (Describing California's "new approach" to escheat) (The Ninth Circuit denied the Controller's petition for rehearing and rehearing *en banc* with the added comment that the panel circulated the petition to all the 58-judges of the Ninth Circuit and "not a single judge" wished to rehear the case); *Taylor v. Westly*, 488 F.3d 1197, *supra* (Directing the District Court to enter a preliminary injunction enjoining Defendants from accepting property under color of the UPL until Controller satisfies Due Process Clause); *Taylor v. Westly*, 525 F.3d 1288 (9th Cir. May 12, 2008); *Suever v. Connell*, 439 F. 3d 1142 (9th Cir. 2006) (Same).

(e) The Controller fails to pay interest for use of private funds by the California General Fund that are taken for use by the State when (and if) the funds are ever returned to the owner. *See Webbs Fabulous Pharms. v. Beckwith*, 449 U.S. 155, 162 (1980).

54. Accordingly, Plaintiffs seek declaratory and injunctive relief against the Controller of the private Unclaimed Property Fund, to remedy the constitutional defects in the UPL.

///

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

## CLASS ACTION ALLEGATIONS

55. Plaintiffs bring this lawsuit as a class action pursuant to Federal Rules of Civil Procedure 23(a); (b)(1); (b)(2); (b)(3); and/or (c)(4), on behalf of themselves and all others similarly situated as members of a class of all persons and entities owning purportedly "unclaimed" property transferred to the Controller under color of the UPL within the applicable statute of limitations who were denied constitutionally adequate notice under the UPL because they did not reside in the United States, the value of the property at issue was less than $50, or for any other prescribed in the UPL as construed by the Controller. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded, divided into additional subclasses under Rule 23(c)(5), or modified in any other way.

56. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used in individual actions alleging the same claims.

57. This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23 and satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of its provisions.

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

58. Although the exact number, identity, and location of persons in the proposed Class is readily discernible based on the Controller's records, upon information and belief, the number of members in the proposed Class will be more than 1,000 persons. Therefore, those persons in the Class are so numerous that joinder of the entire proposed Class is impractical.

59. Accordingly, the disposition of the claims of Class members in a single action will provide substantial benefits to all parties and to the Court. Class members may be readily notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

60. The claims of the Plaintiffs are typical of the claims of the other Class members in that the representative Plaintiffs, like all Class members, has had property taken by the Controller without constitutionally adequate notice. Plaintiffs, like all Class members, have been damaged by Defendants' misconduct in that they have incurred similar or identical losses relating to the taken property. Further, the factual bases of Defendants' misconduct are common to all Class members and represent a common thread of misconduct resulting in injury to all Class members.

61. Plaintiffs are members of the proposed Class will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in complex litigation, including class actions involving issues

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

identical or similar to those raised in this action. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the Class.

62. There are questions of law and fact common to all members of the proposed Class, including whether the Controller complied with the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment by seizing and taking Plaintiffs' property without constitutionally required prior notice.

63. In short, Plaintiffs' claims are typical of those of the members of the proposed Class, who are subject to the same deprivations of their property and rights, and there is a well-defined commonality of interest in this case's questions of law and fact.

64. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiffs and Class members have all suffered and will continue to suffer economic harm and damage as a result of the Controller's unlawful and wrongful conduct, which was directed toward Class members and the public as a whole, rather than specifically or uniquely against any individual Class members.

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

65. The Controller has acted in a uniform manner with respect to Plaintiffs and Class members. Because her duties to comply with the Constitution apply equally to each person in the proposed Class, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Controller.

66. Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class members' claims (particularly those whose property was valued at less than $50), it is likely that only a few Class members could afford to seek legal redress. Absent a class action, Class members will continue to incur damages, and Defendants' misconduct will continue without effective remedy.

67. Class treatment in this Court will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication by providing common answers to the common questions of constitutionality that predominate in this action.

68. Class-wide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(1) and/or (b)(2) because the Controller has acted on grounds that apply generally to the class, and inconsistent adjudications with respect to the Controller's liability would establish incompatible standards and substantially

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

impair or impede the ability of Class members to protect their interests. Class-wide relief and Court supervision under Rule 23 assures fair, consistent, and equitable treatment and protection of all Class members, and uniformity and consistency in the Controller's discharge of his duties in accordance with the Constitution. Defendants' actions and threatened actions deprived, are depriving, and will deprive Plaintiffs and the members of the proposed Class of their constitutional rights on grounds generally applicable to all, thereby making appropriate declaratory and injunctive relief with regard to the proposed Class as a whole.

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

**FIRST CLAIM FOR RELIEF**

**(U.S. Const. Fourteenth Amendment § 1 - Due Process Clause: 42 U.S.C. § 1983)**

69. The allegations set forth above in paragraphs 1 through 68 are incorporated into this claim by reference as though set forth in full.

70. The Fourteenth Amendment, Section 1, of the United States Constitution provides, in part, "nor shall any State deprive any person of life, liberty, or property, without due process of law. . . ." A claim alleging violation(s) of this federal right may be brought under 42 U.S.C. § 1983.

71. Under the color of law provided by the UPL, Defendant has violated (and continues to violate) the Plaintiffs' right to due process through the enforcement and administration of the UPL by depriving them of his property without due process.

72. In every instance that the UPL allows the Controller to seize property without notice, it allows the Controller to violate the constitutional rights of Plaintiffs and Class Members. Therefore, the UPL is facially unconstitutional.

73. Neither of the Plaintiffs received notice that the Controller seized their property.

74. Plaintiffs, as well as the owners of existing property, have a constitutionally protected property interest in the private property that they own and that is seized by the State of California under the processes described herein. Defendant Cohen has deprived Plaintiffs and other property owners of their constitutionally protected property interests by seizing their property without notice and due process.

75. Plaintiff Whitty did not receive fair compensation or interest for the loss of property. The recovery Plaintiff Whitty has received from the Controller is grossly inadequate. It fails to put Plaintiff Whitty in the same position monetarily as he would have occupied if the property had not been seized and taken by the State.

76. Unless Defendant Cohen is enjoined from continuing to enforce and administer the UPL, they will continue to violate the constitutional rights of Plaintiffs and others.

77. Plaintiffs and Class Members have no plain, speedy, adequate remedy at law; therefore, injunctive relief from this Court is the only means available to them

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

to protect the rights guaranteed to Plaintiffs and the Class members by the Fourteenth Amendment's Due Process Clause.

**<u>SECOND CLAIM FOR RELIEF</u>**

**(U.S. Const., Fifth Amendment - Takings Clause: 42 U.S.C. § 1983)**

78. The allegations set forth above in paragraphs 1 through 77 are incorporated into this claim by reference as though set forth in full.

79. The Fifth Amendment to the United States Constitution provides, in part, that "[n]o person shall . . . . be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." The Fourteenth Amendment incorporates the Takings Clause and applies it to the State of California. *See Chicago Burlington and Quincy R.R. v. City of Chicago*, 166 U.S. 226 (1897). The Takings Clause is enforceable via an action brought under 42 U.S.C. § 1983.

80. Under the color of law provided by the UPL, Defendant has violated (and continues to violate) Plaintiffs' right under the Fifth Amendment through their enforcement and administration of the Act by taking Plaintiffs' property without just compensation.

81. Plaintiff Whitty did not receive just compensation for the loss of his property. The recovery Plaintiff Whitty has received from the Controller is grossly

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

inadequate. It fails to put Plaintiff Whitty in the same position monetarily as he would have occupied if the property had not been seized and taken by the State.

82. Further, once the private property is liquidated, the Controller fails to pay interest on the property that is seized and taken, and the nonpayment of interest is itself a separate violation of the Takings Clause.

83. Defendant Cohen is acting in the capacity of a private trustee and custodian of private funds. The unlawful takings of private property had no valid public use or purpose.

84. Unless Defendant Cohen is enjoined from continuing to enforce and administer the UPL, she will continue to violate the constitutional rights of Plaintiffs and other Class Members for the foreseeable future.

85. Plaintiffs and Class Members have no plain, speedy, adequate remedy at law; therefore, injunctive relief from this Court is the only means available to them to protect the rights guaranteed to Plaintiffs and the Class members by the Fifth Amendment's Takings Clause.

**THIRD CLAIM FOR RELIEF**

**(Breach of Fiduciary Duty against Defendant Cohen)**

86. The allegations set forth above in paragraphs 1 through 85 are incorporated into this claim by reference as though set forth in full.

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

87. Defendant Cohen has a fiduciary duty to the owners of private property seized by the Controller, which collects property that still belongs to the owners and is held for the benefit of those owners. The Controller holds the property in custodial trust for the benefit of the owners.

88. Defendant Cohen breached those duties. The Controller provided no direct mail notice or individualized notice whatsoever to the Plaintiffs alerting them that the State was seizing their property. The Controller failed to verify owner information with other databases available to her.

89. Defendant Cohen has issued instructions to Holders to deliver property, accounts, and funds with no ownership information whatsoever. In the case of some forms of property, such as safe deposit boxes, Defendant Cohen has ordered Holders to sell and destroy the property and to forward the payment from the private sale.

90. The Controller exercises control over the payment of claims submitted to the Controller and failed to comply with her fiduciary duty toward Plaintiffs. She failed to make payment to Plaintiffs in a timely fashion. The Controller failed to provide Plaintiffs with a fair valuation of their property at issue.

91. Plaintiffs have suffered damages due to Defendant Cohen's breach of her fiduciary duties.

92. Defendant Cohen's breach of fiduciary duty entitles Plaintiffs to both compensatory and punitive damages.

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

## FOURTH CLAIM FOR RELIEF

### (Negligence Against Defendant Verus)

93. The allegations set forth above in paragraphs 1 through 92 are incorporated into this claim by reference as though set forth in full.

94. Defendant Verus had a duty to act reasonably to ensure that the property of Plaintiffs was not identified as "unclaimed" under the UPL when it was not in fact "unclaimed."

95. Defendant Verus had a duty to act reasonably to ensure that Plaintiffs received timely and meaningful pre-deprivation notice before their property was seized and taken under the UPL.

96. Defendant Verus had a further duty to act reasonably to ensure that Plaintiffs received timely and meaningful post-deprivation notice to enable them to timely recover their property after it was seized and taken under the UPL.

97. Defendant Verus breached those duties. Plaintiffs received no notice at all before the property was unconstitutionally seized and taken by the Controller under the UPL.

98. Defendant Verus' breach proximately caused damage to Plaintiffs. The property would not have been seized if it had been properly identified as not "unclaimed." Plaintiffs would have taken steps to prevent the seizure, taking, and

liquidation of the property if they had received timely and meaningful pre-deprivation or post-deprivation notice.

99. Defendant Verus has a strong profit motive to identify as much "unclaimed" property as possible and to provide as little notice as possible to property owners under the UPL.

## FIFTH CLAIM FOR RELIEF

**(Fraud Against Defendant Verus)**

100. The allegations set forth above in paragraphs 1 through 99 are incorporated into this claim by reference as though set forth in full.

101. Defendant Verus misrepresented to the Controller the correct names and correct addresses of Plaintiff Whitty and other Class Members.

102. Defendant Verus is charged with fraudulent activity by providing false information to the Controller.

103. Defendant Verus could have prevented the destruction of private property by providing researched and correct information on Plaintiffs' addresses where they could receive constitutional notice of their property about to be seized. Defendant Verus knew that by falsifying addresses would lead to the property being escheated to the Controller.

104. Plaintiffs have been substantially harmed by Defendant Verus' misrepresentations to the Controller and her staff.

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

105. Plaintiffs further allege that Defendant Verus' conduct has been committed in callous disregard of Plaintiffs' interests, and with intent to injure and cause harm to Plaintiffs. The facts alleged herein demonstrate that Defendant Verus' conduct is and was despicable. Therefore, Plaintiffs are entitled to recover punitive damages in an amount appropriate to punish or to set an example of Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. Declaratory relief declaring that Defendant's enforcement and administration of the Act against Plaintiff and the members of the Class violate the Fifth and Fourteenth Amendments of the United States Constitution;

2. Injunctive relief enjoining the Controller from enforcing or administering the UPL unconstitutionally against Plaintiffs and Class Members;

3. Injunctive relief requiring Defendant to return each Plaintiff's property and each Class member's property with substantive due process rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution;

4. Prejudgment and post-judgment interest;

5. An award of attorney's fees and costs under 42 U.S.C. § 1988; and

6. Such other and further relief as this Court deems just and proper.

///

///

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

DATED: June 12, 2026 Respectfully submitted,

PALMER LAW GROUP, a PLC

By: ______________________
William W. Palmer

*Attorneys for plaintiffs Paul R. Hashim, Karl A. Whitty, and Class Members*

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: June 12, 2026

PALMER LAW GROUP, a PLC

By: ______________________
William W. Palmer

*Attorneys for plaintiffs Paul R. Hashim, Karl A. Whitty, and Class Members*

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

# Exhibit A

# BLUE CHIP STAMPS/BERKSHIRE HATHAWAY [1]

Historical Information

July 16, 1997

| BLUE CHIP STAMPS | | | | | |
|---|---|---|---|---|---|
| Date Received | Number Shares | Notice Sent | Shares Claimed | Shares Traded | Shrs Cnvrt Berk/Hath |
| 08/26/77 | 22 | yes | 0 | 22 | 0 |
| 04/10/79 | 114 | yes | 0 | 0 | 114 |
| 04/30/80 | 32 | yes | 0 | 0 | 32 |
| 11/06/80 | 205 | yes | 25 | 0 | 180 |
| 11/04/81 | 46 | yes | 0 | 0 | 46 |
| 05/21/82 | 36 | yes | 36 | 0 | 0 |
| 10/10/82 | 225 | yes | 0 | 0 | 225 |
| Total | 680 | | 61 | 22 | 597 |

| BERKSHIRE HATHAWAY | | | | |
|---|---|---|---|---|
| Date Received | Number Shares | Notice Sent | Shares Claimed | Shares Traded |
| 11/07/83 (2) | 45 | yes | 20 | 25 |
| 11/07/83 (3) | 24 | yes | 23 | 1 |
| 05/17/84 | 2 | no | 1 | 1 |
| 05/15/85 (3) | 2 | yes | 0 | 2 |
| 05/08/86 (3) | 3 | yes | 1 | 2 |
| 05/03/89 (4) | 132 | yes | 83 | 49 |
| 11/07/89 (5) | 642 | no | 127 | 515 |
| 12/18/90 | 1 | no | 0 | 1 |
| 12/02/92 (6) | 70 | no | 70 | 0 |
| Total | 921 | | 325 | 596 |

(1) Refer to the Report/Disbursement Information Section for Detail
(2) Blue Chip Stamps Exchange
(3) Merrill Lynch
(4) Nebraska Reciprocity
(5) Massachusetts Reciprocity
(6) State Street Bank

Since the inception of the Unclaimed Property program, the Bureau has traded securities from time to time. However, the policy was to always retain a position so that claimants could be paid in certificate form. The rationale for this policy was due to the fluctuation of the stock market, and by paying in certificate form, owners were not exposed to the situation where we may have sold their stock for $100. 00 per share (for example), and when they came to claim, the stock had appreciated to $500.00 per share. The policy makers at the time did not feel that the SCO should be exposed to such a situation of the increased value of a position, thus the reason for the policy of always paying in certificate form.

TRADE INFORMATION

| DATE TRADED | SHARES TRADED | Broker | Gross | Com-mission | Fees | Net Proceeds | Net Rate Per Share |
|---|---|---|---|---|---|---|---|
| 10/87 | 38 | E. F. Hutton | $158,840 | $101 | $0 | $158,739 | $4,177 |
| 06/90 | 100 | Sutro | $711,250 | $3,000 | $24 | $708,226 | $7,082 |
| 11/95 | 457 | Prudential | $14,248,750 | $27 | $427 | $14,248,296 | $31,118 |
| 09/96 | 1 | Prudential | $32,200 | $0 | $1 | $32,199 | $32,199 |
| TOTAL | 596 | | $15,151,040 | $3,128 | $452 | $15,147,460 | |

NOTICE AND PUBLICATION INFORMATION

NOTICES:

Prior to the implementation of the Franchise Tax Board SSN matching process in the late 1980's, as unclaimed property reports were uploaded to our database, notices were automatically generated and mailed to the owner's last known address. With the implementation of the FTB process, the Bureau's "notice process" was more effective because we were obtaining the owner's current address from the Franchise Tax Board.

PUBLICATIONS:

Through the 1989 report years, the Bureau of Unclaimed Property published the owner's names in each of the 58 counties in California that had a named owner's last know address, as indicated on our computer files, that was located in the county of publication. The last publication of this type was in the 91-92 fiscal year. In addition, in the mid 1980's the Bureau had a Locator Unit with a staff of three that attempted to locate owners and return their property to them. Funding for both the Locator Unit and the publication of names in the newspapers was not available after 1989. In 1994, some publication funding was restored, and the Bureau began placing "block ads" in newspapers of wide circulation. In November, 1994 the "block ad" covered unclaimed property reports from 1990 through 1993.