William W. Palmer, Esq. (SBN 146404)
*wpalmer@palmercorp.com*
**PALMER LAW GROUP, a PLC**
907 Westwood Boulevard, No. 218
Los Angeles, California 90024
Telephone: (310) 984-5074

Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Paul A. Rigali (SBN 262948)
*prigali@larsonllp.com*
Dana M. Howard (SBN 280798)
*dhoward@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone: (213) 436-4888
Facsimile: (213) 623-2000

Michael J. Bidart (SBN 60582)
*mbidart@shernoff.com*
Ricardo Echeverria (SBN 166049)
*recheverria@shernoff.com*
**SHERNOFF BIDART ECHEVERRIA LLP**
600 S. Indian Hill Blvd.
Claremont, CA 91711
Tel: (909) 621-4935
Fax: (909) 625-6915

*Attorneys for Plaintiffs*
*Paul R. Hashim, Karl A. Whitty, U.S. Claims Services, Inc., Edmilson César Martim, Jr., and Class Members*

PALMER LAW GROUP, a PLC
907 Westwood Boulevard, No. 218, Los Angeles, California 90024
Telephone: (310) 984-5074

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PAUL R. HASHIM; KARL A. WHITTY; U.S. CLAIMS SERVICES, INC.; EDMILSON CÉSAR MARTIM, JR.; on behalf of themselves and other persons similarly situated,

Plaintiffs,

vs.

MALIA M. COHEN, individually, and in her official capacity as CALIFORNIA STATE CONTROLLER, and as TRUSTEE OF THE UNCLAIMED PROPERTY FUND; KROLL, LLC; KELMAR

Case No.: 2:26-cv-06449-GW-SK

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION**

*[Filed concurrently with Request for Judicial Notice; Declarations of William W. Palmer, Paul R. Hashim, Karl A. Whitty, Jan Peters, Edmilson César Martim, Jr., Tao Yu, Alexander Borisovich Samoylov, and David Knott; [Proposed] Order]*

| | |
|---|---|
| ASSOCIATES, LLC; and MEAGHAN AGUIRRE, in her official capacity as PRESIDENT OF THE NATIONAL ASSOCIATION OF UNCLAIMED PROPERTY ADMINISTRATORS,<br><br>Defendants. | Hearing Date: January 21, 2027<br>Hearing Time: 8:30 a.m.<br>Courtroom: 9D – 9th Floor<br>Hon. Judge George H. Wu<br><br>Complaint Filed: June 12, 2026 |

**TO THE COURT, THE PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 21, 2027, at 8:30 a.m., or as soon thereafter as the matter may be heard in the United States District Court for the Central District of California, located at Felicitas and Gonzalo Mendez United States Courthouse, 350 W. 1st Street, Los Angeles, CA 90012, Courtroom 9D, Plaintiffs Paul R. Hashim ("Hashim"), Karl A. Whitty ("Whitty"), U.S. Claims Services, Inc. ("USCS") and Edmilson César Martim, Jr. ("Martim"; collectively, "Plaintiffs"), on behalf of themselves and all other persons similarly situated (the putative "Class"), will and hereby do move for a Preliminary Injunction against Defendants Malia M. Cohen, individually and in her official capacity as California State Controller and as Trustee of the Unclaimed Property Fund ("Controller" or "Defendant Cohen"), Kroll, LLC, Kelmar Associates, LLC, and Meaghan Aguirre, in her official capacity as President of the National Association of Unclaimed Property Administrators (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 65 and Civil Local Rule 65-1.

Plaintiffs' Motion seeks an Order restraining and enjoining Defendant Cohen and her agents from accepting, taking title to, or taking possession of any property under the Unclaimed Property Law, California Code of Civil Procedure §§ 1300, *et seq*., and related rules, manuals, policies, and practices of the Controller's office, whether published or unpublished.

This Motion is based on this Notice of Motion and Motion for Preliminary Injunction, the accompanying Memorandum of Points and Authorities, Request for

Judicial Notice, the declarations and all exhibits in support of the same, all pleadings and all other papers on file in this action, and any argument that may be presented at the hearing on this Motion.

Respectfully submitted,

Dated: October 7, 2026

**PALMER LAW GROUP, a PLC**

By: */s/ William W. Palmer*
William W. Palmer

Attorneys for Plaintiffs
*Paul R. Hashim, Karl A. Whitty, U.S. Claims Services, Inc., Edmilson César Martim, Jr., and Class Members*

Dated: October 7, 2026

**LARSON LLP**

By: */s/ Stephen G. Larson*
Stephen G. Larson
Paul A. Rigali
Dana M. Howard

Attorneys for Plaintiffs
*Paul R. Hashim, Karl A. Whitty, U.S. Claims Services, Inc., Edmilson César Martim, Jr., and Class Members*

Dated: October 7, 2026

**SHERNOFF BIDART ECHEVERRIA LLP**

By: */s/ Michael J. Bidart*
Michael J. Bidart
Ricardo Echeverria

Attorneys for Plaintiffs
*Paul R. Hashim, Karl A. Whitty, U.S. Claims Services, Inc., Edmilson César Martim, Jr., and Class Members*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1
II. LEGAL FRAMEWORK ........ 4
- A. Notice Procedures Before the Controller Seizes Property ........ 4
- B. Notice Procedures After the Controller Seizes Property ........ 5
- C. Additional Relevant Procedures Under the UPL ........ 6

III. THIS CASE IS MATERIALLY DIFFERENT FROM *HASHIM V. COHEN* ........ 8
IV. LEGAL STANDARD ........ 11
V. ARGUMENT ........ 12
- A. Plaintiffs Are Likely to Succeed on The Merits. ........ 12
  - 1. Plaintiffs Will Likely Succeed on Their Fourteenth Amendment Due Process Claim Against Defendant Cohen ........ 12
    - a. Relying on the UPL's Constitutionally Deficient Notice Provisions, Defendant Cohen has Seized Property of Minimal Value Without First Providing Effective Notice ........ 12
    - b. Relying on the UPL's Constitutionally Deficient Notice Provisions, Defendants Failed to Provide Effective Notice After Seizing Property ........ 14
  - 2. Defendants Are Violating the Takings Clause. ........ 18
    - a. Defendants Do Not Fully Compensate Owners for the Seizure of Their Property ........ 18
    - b. The State Improperly Profits from Property Seized Under the UPL ........ 20
  - 3. The Controller is Improperly Seizing Property Owned by Out-of-State Citizens and Foreign Nationals. ........ 22
- B. Plaintiffs Will Suffer Irreparable Harm Without an Injunction ........ 24
- C. The Balance of Equities Is Firmly In Plaintiffs' Favor Because the State Has No Legitimate Property Interest In The Seized Private Property ........ 27
- D. The Requested Relief Is In The Public Interest. ........ 28
- E. The Scope Of The Injunction Should Roughly Track The Order

Issued In *Taylor v. Chiang*. 30

VI. CONCLUSION 32

# TABLE OF AUTHORITIES

**Page(s)**

**United States Constitution**

Amendment V ... *passim*

Amendment XIV ... *passim*

**Federal Cases**

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ... 11, 31

*Brown v. Legal Foundation of Washington*,
538 U.S. 216 (2003) ... 19

*Cedar Point Nursery v. Hassid*,
594 U.S. 139 (2021) ... 19

*Cerajeski v. Zoeller*,
735 F.3d 577 (7th Cir. 2013) ... 25

*Connecticut v. Doehr*,
501 U.S. 1 (1991) ... 13

*Edelman v. Jordan*,
415 U.S. 651 (1974) ... 27

*Elrod v. Burns*,
427 U.S. 347 (1976) ... 24

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976) ... 29

*Fuentes v. Shevin*,
407 U.S. 67 (1972) ... 12, 13

*Garza v. Woods*,
150 F.4th 1118 (9th Cir. 2025) ... 14

*Jacobs v. United States*,
290 U.S. 13 (1933) ... 19, 25

*Jones v. Flowers*,
547 U.S. 220 (2006) .................................................................................5, 6, 16

*Knick v. Township of Scott*,
588 U.S. 180 (2019) ...................................................................................19, 25

*Kolton v. Frerichs*,
869 F.3d 532 (7th Cir. 2017) ...........................................................................25

*Lawlor v. National Screen Service Corp.*,
349 U.S. 322 (1955) ...........................................................................................8

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*,
590 U.S. 405 (2020) ...........................................................................................8

*Maron v. Chief Fin. Officer of Fla.*,
136 F.4th 1322 (11th Cir. 2025) ...............................................................18, 25

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ...........................................................................24

*Miranda v. Arizona*,
384 U.S. 436 (1966) .........................................................................................13

*Mousseau v. Crum*,
No. 24-1802, 2025 WL 2437230 (9th Cir. Aug. 25, 2025) ...............................14

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ...................................................................................*passim*

*Murr v. Wisconsin*,
582 U.S. 383 (2017) .........................................................................................18

*N. Georgia Finishing, Inc. v. Di-Chem, Inc.*,
419 U.S. 601 (1975) .........................................................................................13

*Nken v. Holder*,
556 U.S. 418 (2009) .........................................................................................11

*Phillips v. Washington Legal Foundation*,
524 U.S. 156 (1998) .........................................................................................19

*Plemons v. Gale*,
396 F.3d 569 (4th Cir. 2005) .....................................................................16, 17

*Preminger v. Principi*,
422 F.3d 815 (9th Cir. 2005) .......... 29

*Rodde v. Bonta*,
357 F.3d 988 (9th Cir. 2004) .......... 11

*Schroeder v. City of New York*,
371 U.S. 208 (1962) .......... 15

*Sniadach v. Family Fin. Corp. of Bay View*,
395 U.S. 337 (1969) .......... 13

*Suever v. Connell*,
439 F.3d 1142 (9th Cir. 2006) .......... 22

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*,
535 U.S. 302 (2002) .......... 20

*Taylor v. Chiang*,
No. CIV S-01-2407 WBS GGH, 2007 WL 1628050 (E.D. Cal. June 1, 2007) .......... *passim*

*Taylor v. Westly*,
402 F.3d 924 (9th Cir. 2005) .......... 12, 22, 28

*Taylor v. Westly*,
525 F.3d 1288 (9th Cir. 2008) .......... 14

*Taylor v. Yee*,
577 U.S. 1178 (2016) .......... 12

*Taylor, et al. v. Westly*,
488 F.3d 1197 (2007) .......... *passim*

*Temple-Inland, Inc. v. Cook*,
192 F. Supp. 3d 527 (D. Del. 2016) .......... 28

*Tulsa Pro. Collection Servs., Inc. v. Pope*,
485 U.S. 478 (1988) .......... 12

*United States v. 564.54 Acres of Land*,
441 U.S. 506 (1979) .......... 19

*United States v. James Daniel Good Real Property*,
510 U.S. 43 (1993) ........................................ 12

*United States v. Naftalin*,
441 U.S. 768 (1979) ........................................ 29

*United States v. Reynolds*,
397 U.S. 14 (1970) ........................................ 19

*United States v. Winstar Corp.*,
518 U.S. 839 (1996) ........................................ 28

*United States Trust Co. of N.Y. v. New Jersey*,
431 U.S. 1 (1977) ........................................ 28

*Warner v. Hillsborough Cnty. Clerk of Cts.*,
__ F.4th __, 2026 WL 2388937 (11th Cir. Aug. 17, 2026).................... 14, 15, 17

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*,
449 U.S. 155 (1980) ........................................ 19, 20

*Western Union Telegraph Company v. City of Davenport*,
97 U.S. 369 (1878) ........................................ 29

*Winter v. Natural Resources Defense Council, Inc.*,
555 U.S. 7 (2008) ........................................ 11, 31

*Zepeda v. U.S. I.N.S.*,
753 F.2d 719 (9th Cir. 1983) ........................................ 29

**California Cases**

*Azure Limited v. I-Flow Corp.*,
46 Cal. 4th 1323 (2009)........................................ 28

*Bank of America v. Cory*,
164 Cal. App. 3d 66 (1985) ........................................ 6

*Hashim v. Cohen*,
No. A161478, 2023 WL 2261441 (Cal. Ct. App. Feb. 28, 2023).............. 8, 9, 11

*Schneider v. Union Oil Company of California*,
6 Cal. App. 3d 987 (1970) ........................................ 29

*Tidewater Marine W., Inc. v. Bradshaw*,
14 Cal. 4th 557 (1996) ........................................ 31

**Statutes and Rules**

California Code of Civil Procedure
§ § 1300 *et seq.* ........................................ 1
§ 1300(b) ........................................ 4
§ 1300(c) ........................................ 4, 10, 20
§ § 1500 – 1599 ........................................ 4
§ 1501(g) ........................................ 4
§ 1510 ........................................ 22
§ § 1513–1521 ........................................ 4
§ 1513.5 ........................................ 5
§ 1513.5(a)(2) ........................................ 6
§ 1513.5(b) ........................................ 5
§ 1516(b) ........................................ 15
§ 1516(d) ........................................ 5, 6
§ 1520(b) ........................................ 5, 6
§ § 1531–1531.5 ........................................ 4
§ 1531(a) ........................................ 6
§ 1531(b) ........................................ 5
§ 1531.5(c) ........................................ 16
§ § 1540–1542 ........................................ 4
§ 1540 ........................................ 7
§ 1540(c) ........................................ *passim*
§ 1560 (a) ........................................ 6
§ 1563(a)–(b) ........................................ 7, 20
§ 1563(a) ........................................ 7, 26
§ 1563(b) ........................................ *passim*
§ 1564(a) ........................................ 7, 20
§ 1564(c) ........................................ 7, 20
§ 1565 ........................................ 7, 26
§ 1570–1577 ........................................ 5
§ 1577(a) ........................................ 22

Securities & Exchange Commission under the Securities Act of 1933,
15 U.S.C.
§§ 77a–77bbb ........................................ 29

Securities & Exchange Commission under the Securities Act of 1934, 15 U.S.C. §§ 78a–78hh .......... 29

**Other Authorities**

Aprill, Ellen P., Inadvertence and the Internal Revenue Code: Federal Tax Consequences of State Unclaimed Property Laws, 62. U. Pitt. L. Rev. 123, 125-126 (2000) .......... 25

Wolfe, Suellen M., Escheat And The Concept of Apportionment: A Bright Line Test to Slice a Shadow, 27 Ariz. St. L.J. 173–174 (1995) .......... 25

## I. INTRODUCTION

The Unclaimed Property Law ("UPL"), California Code of Civil Procedure §§ 1300, *et seq.*,[1] establishes a comprehensive framework that purports to "reunite" unknown property owners with their lost property. Instead of upholding the purpose of this law, Defendants[2] have weaponized the UPL by seizing, selling, and destroying private property without constitutional notice. Worse, Defendants have also deployed deceptive means to seize "unclaimed" property that they are not entitled to by, for example, falsifying the addresses of foreign shareholders to seize and to sell their property as "revenue" for the State of California's (the "State") Unclaimed Property Fund ("UPF") and its General Fund.

The consequences of Defendants' behavior are significant: (1) Plaintiffs'[3] constitutional rights are violated because their property has been taken by Defendants without due process; and (2) the State profits immensely from the unconstitutional seizure to the tune of billions a year. Indeed, the unlawful seizures under the UPL generate the fifth-highest source of revenue for the State's General Fund.

///

///

///

---

[1] Unless otherwise indicated, further statutory references are to the California Code of Civil Procedure.

[2] Defendants are Malia M. Cohen, individually and in her official capacity as California State Controller and as Trustee of the Unclaimed Property Fund ("Controller" or "Defendant Cohen"), Kroll, LLC, Kelmar Associates, LLC, and Meaghan Aguirre, in her official capacity as President of the National Association of Unclaimed Property Administrators ("NAUPA"; collectively, "Defendants").

[3] Plaintiffs are Paul R. Hashim ("Hashim"), Karl A. Whitty ("Whitty"), U.S. Claims Services, Inc. ("USCS") and Edmilson César Martim, Jr. ("Martim"; collectively, "Plaintiffs")

Even though various courts have decried the improper seizure of private property[4]—and even though the prior Controller publicly apologized[5] and lambasted the improper seizures as "dead wrong" [6]—Defendants continue the practice of seizing private property without providing proper notice.

Plaintiffs therefore ask this Court to enjoin the Defendants from accepting, taking title to, or taking possession of any property under the UPL without providing constitutional notice and due process of law to Californians and foreign property owners while this litigation is resolved. As described herein, good cause warrants this relief:

*First*, Plaintiffs are likely to succeed on the merits of their claims. When they seize unclaimed property under the UPL, Defendants violate Plaintiffs' due process rights under the Fourteenth Amendment. Specifically, Defendants seize Plaintiffs' property without constitutional notice when they deem the property to be of "minimal value." Even where the UPL requires notice, Defendants effectuate that notice in materially deficient ways, such as publication via newspaper advertisements and the Controller's website. This exact type of notice has been found deficient where, as here, Defendants are reasonably able to discern the

---

[4] For example, during oral argument before the Ninth Circuit, one panel judge commented on the prior Controller's decision to defend himself in a litigation regarding the improper seizure of private property under the UPL after being previously told to change his practices: "I'm amazed you're litigating at all, I thought our last decision was clear enough, so that you would work out a constitutional procedure, and when I read this stuff, I wondered if someone was going to have to go to jail before you did." Oral Argument at 26:14, *Taylor, et al. v. Westly*, 488 F.3d 1197 (2007) (No. 05-16763), cdn.ca9.uscourts.gov/datastore/media/2006/07/31/05-16763.mp3.

[5] J. Chiang, "State Controller on asset seizure," Orange County Register (July 29, 2007). Request For Judicial Notice ("RJN"), Ex. 14.

[6] *See* minute 2:00 ABC Good Morning America, Not-So-Safe-Deposit Boxes: States Seize Citizens' Property to Balance Their Budgets (May 12, 2008) found at: http://www.youtube.com/watch?v=ZdHLIq0qHhU

identity of the property owner and his address by using public records. Defendants also violate Plaintiffs' Fifth Amendment rights by improperly seizing Plaintiffs' private property and failing to adequately compensate Plaintiffs. Instead of providing Plaintiffs the value of their property plus interest, Defendants remit only a nominal amount to Plaintiffs who obtain reimbursement, while the State greatly profits from the seizure, sale, and destruction of Plaintiffs' property. Finally, Plaintiffs are likely to succeed on their remaining claims because Defendants use deceptive methods to establish a nexus with Plaintiffs, who are out-of-state citizens and foreign nationals, and the State. Specifically, even though Plaintiffs' property is not subject to seizure under the UPL, Defendants modify Plaintiffs' known addresses to appear as though they are California residents to justify the unconstitutional seizure.

*Second*, the harms stemming from Defendants' actions are significant and irreparable. As a matter of law, the violation of constitutional rights is an irreparable harm. And even though Defendants have explicitly acknowledged that their actions violate the law, they still take advantage of the UPL to benefit from illegally seized property. Plaintiffs are not fully compensated for the seizure of their property, and lose significant rights connected to intangible assets, such as voting rights and the ability to sell stocks. Plaintiffs also face the loss of sentimental items, such as family heirlooms, that were obtained by Defendants through the seizure of safe deposit boxes. There are no damages available to truly compensate Plaintiffs in these circumstances.

*Third*, the balance of equities tips in Plaintiffs' favor. Plaintiffs' rights as property owners greatly outweigh Defendants' interest in using that property as a revenue source after failing to properly notify the owner that their property will be, or has been, seized. Thus, the injunction sought herein is in the public interest. Defendants have demonstrated that they will continue to exploit the UPL and flout the law. Their actions impact not only Plaintiffs, but the entire public. Court action

is needed to curb the behavior while this lawsuit is pending. Accordingly, and as described further herein, Plaintiffs respectfully request that this Court issue a preliminary injunction.

## II. LEGAL FRAMEWORK

### A. Notice Procedures Before the Controller Seizes Property

The UPL establishes a comprehensive framework by which property that has been unclaimed[7] for three years is escheated[8] to the State after a specified dormancy period. §§1500–1599. The UPL requires three phases to transfer the property to the State: (1) a dormancy period during which property sits inactive with a Holder;[9] (2) due diligence and a reporting and remittance phase in which the Holder transfers the property to the Controller's Office; and (3) a claim phase during which original owners or their heirs may reclaim their property from the Controller, with no permanent deadline for doing so. §§ 1513–1521, 1531–1531.5, 1540–1542, 1560(a); *see* RJN, Ex. 16.

///

[7] "'Unclaimed property,' … means all property (1) which is unclaimed, abandoned, escheated, permanently escheated, or distributed to the state, or (2) which, under any provision of law, will become unclaimed, abandoned, escheated, permanently escheated, or distributed to the state, or (3) to the possession of which the state is or will become entitled, if not claimed by the person or persons entitled thereto within the time allowed by law, whether or not there has been a judicial determination that such property is unclaimed, abandoned, escheated, permanently escheated, or distributed to the state." § 1300(b).

[8] "'Escheat,' … means the vesting in the state of title to property the whereabouts of whose owner is unknown or whose owner is unknown or which a known owner has refused to accept, whether by judicial determination or by operation of law, subject to the right of claimants to appear and claim the escheated property or any portion thereof." § 1300(c).

[9] "'Holder' means any person in possession of property subject to this chapter belonging to another, or who is trustee in case of a trust, or is indebted to another on an obligation subject to this chapter." § 1501(g).

Because the UPL is a mechanism through which the Controller seizes a person's private property, the Controller is constitutionally required to give notice to the property owners of the seizure. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). For property valued at $50 or more, the Holder of the property must make "reasonable efforts" to mail, within six to twelve months before the property becomes reportable to the Controller, a written notice to the apparent owner at their last known address informing them that the Holder will turn over their property to the State. §§ 1513.5 (banking and financial organizations), 1516(d) (business associations), 1520(b) (other Holders). If the mailed notice is promptly returned, the party charged with notice "must make reasonable efforts to learn the correct address before constructive notice will be deemed sufficient." *See Jones v. Flowers*, 547 U.S. 220, 225–27 (2006) (citing *Plemons v. Gale*, 396 F.3d 569, 576 (4th Cir. 2005)). Otherwise, the UPL requires nothing further, and the Holders thereafter are compelled to transfer the property to the Controller. Indeed, the Controller issues substantial fines and penalties against the Holders who retain and use the owner's property in violation of the UPL. *See* §§ 1570–1577. Significantly, *no notice* is required if the property is valued at less than fifty dollars. *See* § 1513.5(b) (no notice "shall...be required for deposits, accounts, shares, or other interests of less than fifty dollars ($50)").

**B. <u>Notice Procedures After the Controller Seizes Property</u>**

Once the property transfers to the Controller, the Controller is required to mail a letter to "each person having an address listed in the report who appears to be entitled to property of the value of fifty dollars ($50) or more." § 1531(b). If the Holder's report includes a Social Security number, the Controller must request a current address from the California Franchise Tax Board (which assumes the owner is a tax-paying resident of California); otherwise, if no different address is provided, "the Controller shall mail the notice to the address listed in the [Holder] report." *Id.* The Controller relies on the Holder's records identifying the address for an apparent

owner "which the Holder's records do not disclose to be inaccurate." §§ 1513.5(a)(2), 1516(d), 1520(b); *see* RJN Ex. 16.

The Controller's notice therefore is sent to whatever address the Holder reports, which is already known to be stale, as it is the reason why the property is escheated. Where that address is false, the notice cannot reach the owner. *See Jones*, 547 U.S. at 225–27. Thus, in many instances, including where the Holder's address information is missing, unusable, or falsified, or where the property is valued under $50, owners receive *no individualized notice* before or after the Controller assumes custody of their property.

The UPL requires the Controller to give "notice" once more after title to the property has transferred. Within one year *after* payment or delivery of escheated property, "the Controller shall cause a notice to be published in a manner that the Controller determines to be reasonable, which may include, but not be limited to, newspapers, Internet Web sites, radio, television, or other media." *See* § 1531(a). The Controller utilizes a website for the public to see if their property has been seized under the UPL.[10]

### C. <u>Additional Relevant Procedures Under the UPL</u>

The UPL dictates that, upon payment or delivery of escheated property to the Controller, "the state shall assume custody and shall be responsible for the safekeeping of the property." § 1560(a). "[T]he State, through the Controller, acts as the protector of the rights of the true owner"; "the statutory scheme of the UPL compels the Controller to affirmatively take all steps necessary to carry out the purposes of the UPL," first among them, "to reunite owners with unclaimed funds or property." *Bank of America v. Cory*, 164 Cal. App. 3d 66, 74 (1985); Request for Judicial Notice ("RJN") No. 1: Department of Finance, Manual of State Funds,

[10] The Controller's Unclaimed Property website is located at: https://www.sco.ca.gov/search_upd.html

"Fund:0970" (Fiduciary/Private-Purpose Trust Funds). The Controller purports to fulfill its fiduciary duties, in part, by placing the owner's name and last known address on the Controller's website. Claimants may submit claim forms seeking the return of certain types of property by mail or online. *See* § 1540. There are no published regulations outlining this claim process. If the owner of the unclaimed property is able to receive the property back or the funds from the sale of the property, the UPL denies the owner any interest on their seized property. § 1540(c) ("Interest shall not be payable on any claim paid under this chapter.")

Even though the Controller possesses the unclaimed property in lieu of the true owner, the UPL still requires sale or destruction of property in the Controller's custody. § 1563(a) (All escheated property delivered to the Controller "shall be sold by the Controller to the highest bidder."). Securities listed on an established stock exchange "shall be sold at the prevailing prices on that exchange … no sooner than 18 months, but no later than 20 months, after the actual date of filing of the report." § 1563(a)–(b). Once the securities are sold, a claiming owner is "entitled to receive the net proceeds received by the Controller from its sale"—nothing more. § 1563(b). Property deemed to have no apparent commercial value may be destroyed (§ 1565), such as the contents of safe deposit boxes like wills, military commendations, title to property, love letters, etc.[11] The moneys from the seizure or sale of the property are then held in the UPF. § 1564(a). On a monthly basis, all but $50,000 of the UPF is transferred to the State's General Fund for the State's own use as a "no interest" loan. *See* § 1564(c).

///

///

///

[11] *See* ABC Good Morning America, Not-So-Safe-Deposit Boxes: States Seize Citizens' Property to Balance Their Budgets (May 12, 2008) found at: http://www.youtube.com/watch?v=ZdHLIq0qHhU.

## III. THIS CASE IS MATERIALLY DIFFERENT FROM *HASHIM V. COHEN*

This case fundamentally differs from *Hashim v. Cohen*, No. A161478, 2023 WL 2261441 (Cal. Ct. App. Feb. 28, 2023) in three critical ways.

First, Plaintiff Hashim has had new assets illegally seized by the Controller since he filed his prior complaint in 2013. *Hashim*, 2023 WL 2261441 at *1. For decades, Hashim has sought to rectify Defendants' continuous improper seizure of his property under the UPL. Between 2013 and the present, Hashim has suffered from unnoticed property seizures by California and defendant NAUPA.[12] Declaration of Paul R. Hashim ("Hashim Decl."), at ¶¶ 38–40—listing seizures and NAUPA Account Nos. 11786115, 11786102, 11602802, and 15062202. It is well-settled that, despite the dismissal of his prior lawsuit, Hashim is entitled to continue seeking the aid of the court system to protect his property from Defendants' unlawful seizures. A prior judgment "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 328 (1955); *see Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 414 (2020) ("claim preclusion generally does not bar claims that are predicated on events that postdate the filing of the initial complaint because events occurring after a plaintiff files suit often gives rise to new "operative facts" creating a new claim to relief." (cleaned up)).

Second, Hashim is no longer a resident of California, but a resident of Texas. This places him in a materially different position than when he brought the prior suit. As described below, the UPL only permits seizure of property if the owner has some nexus to California. Hashim has no such nexus, and he is entitled to seek relief from the unlawful seizure of his property. Hashim Decl., ¶ 2.

[12] The NAUPA was not a defendant in *Hashim*.

Third, Plaintiffs Whitty and Martim, who are foreign nationals, were not parties to the earlier *Hashim* case. Here, for the first time, Whitty and Martim bring their causes of action following the seizure of their assets through illegal and improper means. Further, Whitty and Martim allege that Defendants changed their addresses in California records to ensure that they did not receive proper notice of the seizures—an allegation not considered in *Hashim*.

Whitty is a citizen and resident of the United Kingdom, which has its own unclaimed property law and website.[13] Like Hashim, Whitty received no notice at all before his property was seized and sold by Defendants. Whitty is not "unknown" and had no intention of "abandoning" his personal property to a state official of California, thousands of miles from where he lives. Declaration of Karl A. Whitty ("Whitty Decl.") ¶¶ 2–4, 8–9, 18–20. Defendants did not mail effective notice to Whitty because they altered his address from "****, Cardiff, CF5 5BD, United Kingdom" to "****, CF5 5BD, CARDIFF, CA [California] 00000."[14] *Id*. ¶¶ 7, 10, 13–16. The same misconduct has been directed at many foreign shareholders. *See* Hashim Decl., ¶ 19; Declaration of Jan Peters ("Peters Decl."), ¶¶ 5, 23–29, 40; Declaration of Edmilson César Martim, Jr. ("Martim Decl."), ¶¶ 14, 30–31, 48; Declaration of Tao Yu ("Yu Decl."), ¶¶ 20–21, 28–32; Declaration of Alexander Borisovich Samoylov ("Samoylov Decl."), ¶¶ 3, 25–28.

Importantly, Whitty submitted the requisite paper claim form that must be notarized at a United States Embassy, received payment, and is recognized by the Controller as the rightful owner entitled to seek the return of the seized property belonging to him.[15] But the recovery he received from the Controller is grossly

[13] https://www.gov.uk/government/publications/dormant-assets-scheme-strategy/dormant-assets-scheme-strategy

[14] All addresses are redacted pursuant to L.R. 5.2-1.

[15] In *Hashim*, the Court dismissed some causes of action in part because "plaintiffs [did] not allege that they sought return of their property from the Controller or that

inadequate and fails to put him in the same position monetarily as he would have occupied if the property had not been seized and taken by Defendants in the first place. Whitty Decl., ¶¶ 22–28 (Whitty received $4,749.95 from the Controller, seventeen months after his claim, for shares that would now be worth approximately $15,222.60).

Plaintiff Martim is a "known" citizen and resident of Brazil, a country which also has its own unclaimed property law and website.[16] The UPL requires that the property owner must be "unknown" to the state. § 1300(c). Like Hashim and Whitty, Martim received no notice at all before his property was unconstitutionally seized and taken by Defendants under the color of the UPL for use by the State. Martim is not "unknown" and had no intention of "abandoning" his large personal Google retirement stock savings in Brazil, which was worth $708,641.22 at the time of seizure and forced sale by Defendants. Martim Decl., ¶¶ 3, 9–11, 13–18, 30, 32. Here too, Defendants did not mail Martim effective notice at his correct address, but Defendants Cohen and Kroll instead altered from "Santa Barbara D'Oeste, Brazil 13450-005" to "CA [California] 00000." Martim Decl., ¶ 3, 9, 14, 16, 30–31, 48. Martim submitted the requisite claim to the Controller as the rightful owner seeking the return of his property, which required him to travel several hours to a United States Embassy to notarize the one-page Controller paper claim form.[17] Since then,

---

the Controller denied their requests." 2023 WL 2261441, at *5. In this case, Plaintiffs have plead the necessary allegations for their claims to survive a motion to dismiss.

[16] Brazilian Unclaimed Property website found at: https://valoresareceber.bcb.gov.br/

[17] Martim Decl. ¶¶ 29, 33 (the Controller required "a wet signature beneath a notary stamp"). For many foreign owners the requirement cannot be met at all. *See also* Yu Decl. ¶¶ 43–46 (notaries in Xi'an will not notarize a foreign government's form, and the nearest U.S. consular post is more than 1,000 kilometers from claimants in their nineties); Whitty Decl. ¶ 24 (no procedure in England and Wales to notarize the form "in the way the form demands").

his claims for the proceeds of the sale have been denied repeatedly by the Controller. Martim Decl. ¶¶ 37–45, 48.

Thus, this case presents new facts, new legal circumstances, and new parties that were not a part of *Hashim*. Plaintiffs are entitled to seek relief on the merits of their claims in the First Amended Complaint.

## IV. LEGAL STANDARD

District courts evaluating requests for preliminary injunctive relief must consider four interrelated criteria: (1) whether Plaintiffs are likely to succeed on the merits; (2) whether Plaintiffs are likely to suffer irreparable harm in the absence of relief; (3) whether the balance of equities tips in their favor; and (4) whether the injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Rodde v. Bonta*, 357 F.3d 988, 994 (9th Cir. 2004). Because the Controller is a defendant, the factors of harm to the opposing party and the public interest merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). In the Ninth Circuit, "[a] preliminary injunction is appropriate when a plaintiff demonstrates … that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).

///

///

///

///

///

///

///

///

## V. ARGUMENT

### A. Plaintiffs Are Likely to Succeed on The Merits.

#### 1. Plaintiffs Will Likely Succeed on Their Fourteenth Amendment Due Process Claim Against Defendant Cohen

a. Relying on the UPL's Constitutionally Deficient Notice Provisions, Defendant Cohen has Seized Property of Minimal Value Without First Providing Effective Notice

It is black-letter law that *before* a state deprives an owner of their property, the Due Process Clause requires the state to provide the property owners "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.[18] The purpose of due process in this context is "to protect [a person's] use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property[.]" *Fuentes v. Shevin*, 407 U.S. 67, 80–81 (1972).

By implementing the UPL to seize Plaintiffs' property and the property of others, Defendant Cohen has violated the Fourteenth Amendment. The UPL dictates

[18] *See United States v. James Daniel Good Real Property*, 510 U.S. 43, 53 (1993) ("The right to prior notice"—*before* Defendants seize or appropriate property—"is central to the Constitution's command of due process."); *Tulsa Pro. Collection Servs., Inc. v. Pope*, 485 U.S. 478, 485 (1988) ("actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party." (quotation marks omitted) (emphasis in original)); *Taylor v. Yee*, 577 U.S. 1178, 1179 (2016) (Alito, J., concurring in denial of certiorari) ("States must employ notification procedures designed to provide the pre-escheat notice the Constitution requires."); *see also Taylor v. Westly*, 402 F.3d 924, 929–936 (9th Cir. 2005) ("*Taylor I*") (failing to provide notice and an opportunity to object before permanently divesting owners of their private property violates the due process clause); *Taylor v. Westly*, 488 F.3d 1197, 1199 (9th Cir. 2007) ("*Taylor II*") (preliminary injunction appropriate where the prior Controller had a written policy of escheating "property without written notice calculated to be received by the owner").

that persons are *not* entitled to any direct notice before or after California seizes their property if: (1) the property is valued at less than $50; or (2) the owners are listed as "owner unknown." *See* §§ 1513.5(c), 1531(b). But Plaintiffs are entitled to due process protection even when property has minimal value. *See Fuentes*, 407 U.S. at 72 (the loss of household goods, including clothes, furniture, and children's toys, was significant enough to warrant a pre-deprivation hearing); *Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337, 338–339 (1969) (a $63.18 garnishment was held invalid for lack of prior notice, even though the garnishment would be "unfrozen" if the wage-earner prevailed in a subsequent proceeding). Defendant Cohen therefore cannot continue relying on the UPL's provisions to avoid notifying owners that their property has been seized, or to compel or coerce Holders not to provide notice. *Miranda v. Arizona*, 384 U.S. 436, 491 (1966) ("Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them.").

Further, the Due Process Clause still applies when Defendant Cohen seizes property under the UPL even when she claims those seizures are temporary. "The Fourteenth Amendment draws no bright lines around three-day, 10-day or 50-day deprivations of property. Any significant taking of property by the State is within the purview of the Due Process Clause." *Fuentes*, 407 U.S. at 86; *see Connecticut v. Doehr*, 501 U.S. 1, 12 (1991) (in finding a violation of due process where state statute authorized prejudgment attachment of real estate without prior notice or hearing: "even the temporary or partial impairments to property rights that such encumbrances entail are sufficient to merit due process protection."); *N. Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 606 (1975) (state garnishment statute subject to constitutional due process where plaintiff's property "was impounded").

Thus, because (1) the UPL condones the complete absence of pre-deprivation notice to Plaintiffs in violation of the Fourteenth Amendment; and (2) Defendant Cohen has implemented the UPL by conducting seizures without providing notice,

Plaintiffs easily satisfy the likelihood of success threshold required for a preliminary injunction to issue.[19] Accordingly, this factor weighs heavily in Plaintiffs' favor.

b. Relying on the UPL's Constitutionally Deficient Notice Provisions, Defendants Failed to Provide Effective Notice After Seizing Property

Plaintiffs are also likely to succeed in their due process claim because Defendants, including Defendant Cohen and others acting on behalf of the State and under color of state law, utilize a post-deprivation notice through newspaper advertisements and the Controller's website, which have been explicitly found to constitute deficient notice.

First, the Controller issues a generic, inconspicuous 3" x 5" "block" publication notice that direct the public to a website and a 1-800 number do not provide actual notice to the owners that their specific property has been appropriated by Defendants. RJN, Exs. 11, 12; *see Taylor II*, 488 F.3d at 1201 ("California cites no authority for the proposition that due process is satisfied by a newspaper advertisement saying that a person concerned about his property can check a website to see whether he has already been (or soon will be) deprived of it."); *see also Garza v. Woods*, 150 F.4th 1118, 1130 (9th Cir. 2025) ("In *Taylor II*, we held that California's unclaimed-property law likely did not provide adequate process because notice by publication and notice provided by a third party, such as the holder, are insufficient in this context."); *Warner v. Hillsborough Cnty. Clerk of Cts.*, __ F.4th __, 2026 WL 2388937, at *8 n.11 (11th Cir. Aug. 17, 2026) ("For the same reasons, the fact that this notice also appeared on the State's online database of

[19] Significantly, this exact claim has been found viable in prior cases. *See Taylor v. Westly*, 525 F.3d 1288, 1290 (9th Cir. 2008) (*Taylor III*) (the Ninth Circuit has "already determined" that Plaintiffs' UPL causes of action are "good claims"); *Mousseau v. Crum*, No. 24-1802, 2025 WL 2437230 at *1 (9th Cir. Aug. 25, 2025) (seizure of property constitutes a viable due process claim).

public notices does not satisfy the Due Process Clause here”). These generic “advertisements” are addressed to no one and are often published on dates calculated to reduce readership, such as Thanksgiving Day. *See* RJN Exs. 11, 12. But publication-only notice violates due process for known beneficiaries whose addresses are attainable. *Mullane*, 339 U.S. at 319–20 (notice by newspaper publication was insufficient with respect to known present beneficiaries of a trust and did not satisfy due process); *Warner*, at *7 (“[N]otice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question” (quoting *Schroeder v. City of New York*, 371 U.S. 208, 212–13 (1962))).

As the *Mullane* Court described:

> It would be idle to pretend that publication alone as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts.… Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper’s normal circulation the odds that the information will never reach him are large indeed. The chance of actual notice is further reduced when as here the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention. In weighing its sufficiency on the basis of equivalence with actual notice we are unable to regard this as more than a feint.

*Mullane*, 339 U.S. at 315.

Here, Defendants should not rely on publication notice because the addresses of Plaintiffs are readily ascertainable.[20] Hashim Decl. ¶¶ 5–7, 24–

---

[20] For example, Section 1516(b) provides that, subject to Section 1510, an intangible interest in a business association escheats to the State only if the interest is owned by a person who: (1) for more than three years has neither claimed a dividend nor corresponded in writing with the association or otherwise indicated an interest; *and*

28, 36; Whitty Decl. ¶¶ 2, 7, 10–11, 20; Martim Decl. ¶¶ 3, 9–10, 14, 16, 18; Yu Decl. ¶¶ 6, 19–21, 26; Samoylov Decl. ¶¶ 11, 18, 20, 26–27; Declaration of David Knott ("Knott Decl.") ¶¶ 13, 20, 24. Nevertheless, Defendants do not make reasonable efforts to obtain accurate addresses for Plaintiffs or other persons whose property has been seized. For example, they do not consult readily and publicly available databases—such as DMV records, voter records, and the Franchise Tax Board records, all of which the Controller is expressly authorized to consult[21] —before seizing and selling private property, even though the Controller relies on those same databases to verify the identity of claimants when it is time to pay a claim.[22] *See Jones*, 547 U.S. at 227 (citing *Plemons*, 396 F.3d at 576).

Asking Defendants to review public records to locate the accurate addresses of known property owners is appropriate: "it is, at the very least, reasonable to require examination (or reexamination) of all available public records when initial mailings have been promptly returned as undeliverable." *Plemons*, 396 F.3d at 577. "'[E]xtraordinary efforts' typically describe

---

(2) the association does not know the location of the owner at the end of the three-year period. Defendants cannot seize Plaintiffs' assets under this provision because the "unclaimed" property does not satisfy these conditions—the records currently available indicate that the Holders of the intangible interests held by Plaintiffs knew where Plaintiffs were located. *See* Whitty Decl. ¶¶ 7, 10; Martim Decl. ¶¶ 9–10, 14, 16 & Exs. 1–3; Yu Decl. ¶¶ 19–21 & Exs. 2–3; Samoylov Decl. ¶ 11 & Ex. 2. Still, Defendants seized Plaintiffs' properties regardless of that criteria and without notifying Plaintiffs that their property has been seized.

[21] § 1531.5(c) (state and local agencies "may furnish to the Controller" upon request address information, including otherwise confidential information, to locate owners).

[22] "There is no reason to suppose that the State will ever be less than fully zealous in its efforts to secure the tax revenue it needs. The same cannot be said for the State's efforts to ensure that its citizens receive proper notice before the State takes action against them." *Mullane*, 339 U.S. at 329.

searches *beyond* the public record, not searches *of* the public record." *Id*. (emphases in original); *Mullane*, 399 U.S. at 315 ("process which is a mere gesture is not due process," but rather the "means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."). Without this reasonable effort, private property is sold or destroyed before any owner learns of the "custodial taking" under the UPL through Defendants' limited publication mechanism.

Second, the Controller's website "notice" is similarly deficient under due process principles. "[D]ue process is [not] satisfied by a newspaper advertisement saying that a person concerned about his property can check a website to see whether he has already been (or soon will be) deprived of it." *Taylor II*, 488 F.3d at 1201 (enjoining the Controller from utilizing procedures under a prior version of the UPL); *see Warner*, 2026 WL 2388937 at *8 ("the fact that this notice also appeared on the State's online database of public notices does not satisfy the Due Process Clause here"). The Controller's "website notice" of these seizures also improperly shifts the onus to the public to find and search a website for the proceeds of their seized and destroyed property on the offhand that they believe it has been taken by the Controller.

Thus, Defendants utilize an entirely deficient notice procedure: (1) the Holder mails notice prior to seizure that relies on often outdated or incorrect information and receives no response; (2) even though Defendants know that address is defective, they still send post-seizure notice to the same address as the Holder and receive back undeliverable mail; (3) Defendants then advertise in a newspaper using a "block ad," one that is not calculated to reach the attention of the unnamed property owner, that some property has been seized; and (4) finally, the Controller posts the unclaimed property on its website, wherein the property can be found only if the property is tied to the correct

owner and address. The result of this notice procedure is that Plaintiffs and the public have suffered the seizure of their private property and have additional private property at risk of seizure. Indeed, Plaintiffs received no notice whatsoever before their property was unconstitutionally seized by Defendants under the UPL. This was so even though their names and addresses were readily ascertainable by Defendants. Hashim Decl. ¶¶ 5–7, 24–28, 37; Whitty Decl. ¶¶ 7, 10, 14–16, 18–20; Martim Decl. ¶¶ 3, 9–10, 14–18; Yu Decl. ¶¶ 19–26; Samoylov Decl. ¶¶ 11, 17–20, 26–28; Knott Decl. ¶¶ 20–24; Peters Decl. ¶¶ 9, 13–15.

For example, Plaintiff Hashim, who is now a Texas resident, has and continues to have his property seized without constitutional notice. He did not receive notice prior to the property seizure, even though he has sued the Controller over earlier seizures. Hashim Decl. ¶¶ 6, 36, 37, 41. The Controller's "searchable" website conveys no notice whatsoever for Hashim and offers only post-deprivation notice after Defendants have already seized his property. Hashim Decl. ¶¶ 8–9, 12–14, 18–19, 27, 30.

For the reasons above, Plaintiffs are highly likely to prevail on their due process claim, favoring the entry of a preliminary injunction.

### 2. **Defendants Are Violating the Takings Clause.**

#### a. Defendants Do Not Fully Compensate Owners for the Seizure of Their Property

Under the Fifth Amendment, a state may *not* use private property—even temporarily—for public purposes without paying compensation to the private property owner. The "plain language of the Takings Clause 'requires the payment of compensation whenever the government acquires private property for a public purpose.'" *Murr v. Wisconsin*, 582 U.S. 383, 392 (2017) (citation omitted). The right to compensation "arises *at the time of the taking*, regardless of post-taking remedies that may be available to the property owner." *Maron v. Chief Fin. Officer*

*of Fla.*, 136 F.4th 1322, 1326 (11th Cir. 2025) (quoting *Knick v. Township of Scott*, 588 U.S. 180, 190 (2019)) (emphasis in original).

The failure to pay just compensation for the lost appreciation of property (and interest on appropriated property after its liquidation) violates the longstanding rule under the Fifth Amendment that "compensation must generally consist of the total value of the property when taken, plus interest from that time." *Knick*, 588 U.S. 180 at 190 (quoting *Jacobs v. United States*, 290 U.S. 13, 17 (1933)). A property owner must be put "'in as good a position pecuniarily as if his property had not been taken.'" *United States v. 564.54 Acres of Land*, 441 U.S. 506, 510 (1979) (quoting *Olson v. United States*, 292 U.S. 246, 255 (1934)); *see United States v. Reynolds*, 397 U.S. 14, 16 (1970) (same). The Takings Clause protects the time value of money or property as much as it protects the money or property itself. *See Brown v. Legal Foundation of Washington*, 538 U.S. 216, 235 (2003) (petitioners entitled to interest in IOLTA accounts); *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 165–72 (1998) (discussing the general rule that "interest follows principal"); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162 (1980) (collecting cases) ("The usual and general rule is that any interest on an interpleaded and deposited fund follows the principal and is to be allocated to those who are ultimately to be the owners of that principal").

The Takings Clause is fully applicable to the UPL despite its custodial private funds nature—*i.e.*, despite the fact that property is held in trust fund for return to its rightful owner. Defendants' duty to pay just compensation under the Takings Clause "arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner." *Knick*, 588 U.S. at 190. It is irrelevant that the seizures of property under the UPL are purportedly "temporary." Temporary takings of property are still takings, even if limited in duration. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 153 (2021) ("[A] physical appropriation is a taking whether it is permanent or temporary; the duration of the appropriation bears only on the

amount of compensation due."); *see also Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 322 (2002) ("compensation is mandated" even when government's "use [of property] is temporary").

The UPL is unconstitutional because it purports to authorize Defendants to seize private property—such as Plaintiffs' stock and other appreciation-capable assets—without just compensation, in violation of the Fifth Amendment. The statutory scheme requires the Controller to (1) assume title and control over private property;[23] (2) sell property consisting of exchange-listed securities between eighteen to twenty months after the Holder's report;[24] (3) deposit the funds into the UPF;[25] and (4) transfer all but $50,000 from the UPF into the General Fund.[26] Once this property is sold, liquidated, or destroyed without notice under color of the UPL scheme, the most that the rightful owner can recover is the net proceeds of the destruction and sale. They cannot recover compensation for interest, the time value of money, or the lost appreciation in the property's value, such as in the case of valuable stocks. *See* §§ 1540(c) ("Interest shall not be payable on any claim paid under this chapter."), 1563(b) (recovery is limited to net proceeds of sale of assets).

b. <u>The State Improperly Profits from Property Seized Under the UPL</u>

The Supreme Court has stated that "a State, by *ipse dixit*, may not transform private property into public property without compensation, even for the limited duration of the deposit in court. This is the very thing that the Taking Clause of the Fifth Amendment was meant to prevent." *Webb's Fabulous Pharmacies,* 449 U.S. at 164. In contravention to this instruction, the State is directly profiting when

[23] § 1300(c): "'Escheat,' unless specifically qualified, means the vesting in the state of title to property the whereabouts of whose owner is unknown[.]".

[24] § 1563(a)–(b).

[25] § 1564(a).

[26] § 1564(c).

Defendants seize property under the UPL and fail to properly compensate the owners for that property.[27] Indeed, the Controller lists unclaimed property as a "revenue source" generated for the use of the State,[28] and identifies the sale of "unclaimed property" as the fifth largest source of revenue for the General Fund.[29]

In 2001, for instance, the Controller had seized property worth approximately $2.7 billion; by 2007, the amount seized had grown to $4.1 billion. Today, the Controller holds property valued at over $15 billion, taken from over 84 million accounts (more than a four-fold increase in two decades). RJN Nos. 2–7. From June 30, 2014 to February 5, 2026 (4,238 days) the number of properties held grew from 28.4 million to 84 million, an increase of 55.6 million properties, with an average of approximately 4,791,000 properties per year, or approximately 13,100 properties per calendar day. From November 19, 2018 to February 5, 2026 (2,635 days) the increase was 36 million properties, an average of approximately 13,600 properties per calendar day. From October 31, 2022 to February 5, 2026 (1,193 days) the increase was 13.6 million properties, an average of approximately 11,400 properties per calendar day, or one property every 6 to 8 seconds.

---

[27] "[T]he primary purpose of the UPL is not supposed to be to raise revenue for the state. The Controller's webpage says the law was enacted 'to prevent Holders of unclaimed property from using your money and taking it into their business income.' If the purpose of the law is, as the Controller has reportedly said, to reunite owners with their [property, it would] generate little or no revenue at all for the state." *Taylor v. Chiang*, No. CIV S-01-2407 WBS GGH, 2007 WL 1628050 (E.D. Cal. June 1, 2007) (order granting injunction vacated).

[28] Taylor, Mac, "Unclaimed Property: Rethinking the State's Lost & Found Program, Legislative Analyst's Office (LAO)" (February 10, 2015) at pp. 16-17 found at: http://www.lao.ca.gov/reports/2015/finance/Unclaimed-Property/unclaimed-property-021015.pdf. RJN Ex. 3

[29] The General Fund's five (5) top sources of revenue in descending order are: the personal income tax, the sales and use tax, the corporation tax, the insurance tax, and funds generated by the private property taken as unclaimed property. *See id.* at n.28. RJN Ex. 3

As another example, the Controller issues substantial penalties against the Holders who retain and use the owner's property in violation of the UPL. § 1577(a) (charging twelve percent interest per annum on property not transferred to the Controller). The owner, however, receives no return of these penalties which are based on use of their private property. § 1540(c) ("Interest shall not be payable on any claim paid under this chapter"). Thus, Defendants operate the UPL to effectively create a no-interest loan of exclusively private trust funds to the State while the beneficiaries of the trust receive no benefit whatsoever for the use of their private property.

In sum, Defendants improperly seize private property and benefit from that seizure, in violation of constitutional norms and Supreme Court case law. Plaintiffs are therefore likely to succeed on their cause of action alleging a violation of the Takings Clause.

### 3. **The Controller is Improperly Seizing Property Owned by Out-of-State Citizens and Foreign Nationals.**

Plaintiffs are likely to succeed on their causes of action for breach of fiduciary duty, negligence, and fraud because there is strong evidence that the Controller is acting outside the bounds of her jurisdiction by seizing property belonging to out-of-state citizens and foreign nationals. Property owned by non-Californian foreign citizens is specifically precluded from seizure under the UPL.[30] *See Taylor I*, 402 F.3d at 934 (plaintiff was not a resident of California and "his property was therefore outside the jurisdiction of the escheat statute"); *Suever v. Connell*, 439 F.3d 1142, 1144 (9th Cir. 2006) ("Escheated property must have a jurisdictional nexus with California, such as when the owner's last known address was in the State or the Holder is domiciled there").

[30] *See* § 1510 (providing for the escheat of property of a non-California foreign citizen's property only if there is a jurisdictional nexus with California, such as, *inter alia*, the person is domiciled in the state).

But the Controller has ignored this restriction and escheated property not satisfying these circumstances—meaning that the Controller is seizing the property she cannot control from persons she has no authority over. For example, as identified in the Holder's records, Plaintiff Whitty's last known address was in Cardiff, United Kingdom—until Defendant Kroll falsified the address to "Cardiff, CA 00000" in order to manufacture the California nexus that the UPL requires. *See* Whitty Decl. ¶¶ 7, 10, 13–15; Samoylov Decl. ¶¶ 25–27 (Controller's own form addresses him in the "Russian Federation" and classifies him as "Owner – Foreign," yet lists his property at "MOSCOW CA 00000"); Yu Decl. ¶¶ 28–31; Martim Decl. ¶¶ 14, 30–31. That Defendant Kroll deliberately falsified Whitty's records so that the Controller could unlawfully seize his property is strong evidence that Defendants are aware that they lack jurisdiction over "known" foreign-domiciled owners but are manufacturing ways to seize that property anyway.

Further, the Controller's attempt to notice foreign nationals of seized property through her website is sorely deficient. It is axiomatic that if foreign property owners like Plaintiffs Whitty and Martim are not properly notified that the Controller is seizing their private property, they would have no reason to search a broken and unsearchable California website to confirm their property has not been commandeered or to file a paper claim form for the return of their seized, sold, and destroyed property. *See* Peters Decl. ¶¶ 5–7, 34–47, 51 (the Controller's website is "primitive, difficult to search, and withholds the very fields an owner would need to identify his property"; it caps search results at 1,000, rejects diacritical characters, and displays falsified "CA 00000" location data, so that it "conveys effectively no notice to property owners"). Instead, this unconstitutional "website notice" shifts the burden of constitutional notice from the Controller to the owners to ferret out information on their property after it has been seized, sold, or destroyed by the Controller. Peters Decl. ¶¶ 34–40, 51; *see* Samoylov Decl. ¶ 21 (website not accessible from a Russian internet connection); Martim Decl. ¶¶ 24–28 (no

published guidance; university-educated claimant had to use AI tools to decipher the requirements). And these foreign property owners could not find their property because the addresses are manipulated. Peters Decl. ¶¶ 26–28, 39–40.

Thus, there is a strong likelihood of success on Plaintiffs' claim that the Controller knowingly refuses to comply with her statutory obligations under the UPL, warranting the issue of a preliminary injunction curbing this behavior.

**B. <u>Plaintiffs Will Suffer Irreparable Harm Without an Injunction.</u>**

Because the UPL violates the Fifth and Fourteenth Amendments, the irreparable harm suffered by Plaintiffs is unquestionable. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Without an injunction from this Court, Plaintiffs and the public risk ongoing irreparable harm to their property because Defendants will continue to seize, hold, and sell personal property under the UPL.

The risk to Plaintiffs' securities assets is a prime example of this irreparable harm. The UPL mandates liquidation on a fixed clock: exchange-listed securities "shall be sold" at prevailing prices "no sooner than 18 months, but no later than 20 months, after the actual date of filing of the report" of escheated property. § 1563(b). "When [the government] takes custody of property pursuant to the [unclaimed property law], even temporarily, certain rights associated with ownership are lost which are not compensable in money damages." *Taylor v. Chiang*, 2007 WL 1628050, at *2. The harms are many:

- Once securities are transferred out of an owner's name and sold by Defendants, "it may be impossible for plaintiffs to reacquire it, thus creating the requisite irreparable harm." *Taylor II*, 488 F.3d at 1202 (internal quotation omitted).
- The owner of the securities is permanently deprived of core incidents of ownership during Defendants' custody and liquidation, including, *inter*

*alia*, "the right to vote his or her shares in important matters of corporate governance" and "the ability to sell them." *Taylor v. Chiang*, 2007 WL 1628050, at *2.

- The owner is also limited to the "net proceeds" of Defendants' sale with no interest of any kind. §§ 1563(b), 1540(c). "[C]ompensation must generally consist of the total value of the property when taken, plus interest from that time." *Knick* 588 U.S. at 190 (quoting *Jacobs*, 290 U.S. at 17); *see Cerajeski v. Zoeller*, 735 F.3d 577, 583 (7th Cir. 2013) (failure of an unclaimed property scheme to pay interest was a taking in violation of the Fifth Amendment); *Kolton v. Frerichs*, 869 F.3d 532, 533 (7th Cir. 2017) (same); *Maron*, 136 F.4th at 1326–28, 1334 (vacating dismissal of a Takings Clause challenge where the State of Florida takes custody of unclaimed property, liquidates or invests it, and "keeps and spends" the resulting earnings rather than returning them to the owner).
- Finally, the sale of an owner's stock is a taxable event in the United States, triggering a tax liability even if the "account" otherwise reflects precisely the value of the stock when it was sold.[31] Any owner whose stock is wrongfully seized and sold is thus further irreparably harmed because he has incurred a tax liability on stock that he never intended to sell. *See* Samoylov Decl. ¶¶ 30–31, 56–59 (Russian tax authorities demand an explanation of the forced sale; the Controller has not answered his request for the sale date, share count, and price); Martim Decl. ¶ 34

[31] *See* Internal Revenue Service, IRS Private Letter Ruling 200714002, 2006 PLR LEXIS (Dec. 22, 2006); Aprill, Ellen P., Inadvertence and the Internal Revenue Code: Federal Tax Consequences of State Unclaimed Property Laws, 62. U. Pitt. L. Rev. 123, 125-126 (2000) (Discussing the significant tax consequences of the Unclaimed Property laws); Wolfe, Suellen M., Escheat And The Concept of Apportionment: A Bright Line Test to Slice a Shadow, 27 Ariz. St. L.J. 173–174 (1995).

Another example of the irreparable harm suffered by Plaintiffs and the public is the seizure of safe deposit boxes. "[W]hen the contents of a safe deposit box are seized, the owner is deprived of the use of those articles pending the process he or she must go through to get them returned." *Taylor v. Chiang*, 2007 WL 1628050, at *2. The harm is magnified in California, where the UPL dictates that property delivered to the Controller shall be sold, and property deemed to have no apparent commercial value may be destroyed, making the loss of unique or sentimental items (such as family heirlooms, photos, or personal papers) irreparable. *See* §§ 1563(a), 1565.

The magnitude of this harm is not speculative. Nearly fifty percent of the UPF is composed of aggregated property valued at under $50,[32] taken with no notice, no ownership information, and no listing on the Controller's website. These significant amounts of property have been taken from unwitting owners without constitutional notice. One internal memorandum from the Controller's office documents unnoticed seizures of $1 billion in Berkshire Hathaway stock from shareholders whose shares would carry a market price of $728,540.06 per share today, but which the Trustee Controller sold for between $4,177.00 and $32,199.00 per share. RJN Ex. 9 (Palmer Decl. ¶ 9). No payment of "net proceeds" under § 1563(b) can restore a shareholder in that position, and § 1540(c) forbids even the payment of interest.

Plaintiff Martim has personally suffered the harms of the UPL's claims process for seized property: his claims for the proceeds of the $708,641.22 sale of his Google investment have been repeatedly denied, right up to today. Martim Decl., at ¶¶ 33, 37–45, 49. There are no APA-approved regulations to guide this claim process, which is arbitrary and capricious in its hit-or-miss approach. Plaintiffs and

[32] Taylor, Mac, Unclaimed Property: Rethinking the State's Lost & Found Program, Legislative Analyst's Office (Feb. 10, 2015), at pp. 5–6, https://lao.ca.gov/reports/2015/finance/Unclaimed-Property/unclaimed-property-021015.pdf. RJN, Ex. 3.

other out-of-state and foreign citizens have no way to protect themselves against the UPL. It is estimated that one piece of property is seized, sold, and destroyed every 6 to 8 seconds (RJN Exs. 3–8); every day this scheme operates without an injunction, more securities reach the § 1563(b) 18-to-20-month liquidation deadline and more owners are placed permanently beyond the reach of restoration.

Where, as here, there are not any damages available to truly compensate the owners of the unlawfully seized property, the harm is irreparable. In issuing the same requested relief preventing the prior Controller from exercising his authority under the previous version of the UPL, the district court explained that even if losses such as the diminution in value of stock, or the loss of use of articles from a safe deposit box, might in theory be compensated in money damages, the Eleventh Amendment's prohibition on awarding damages for the wrongful conduct of state officials out of a state's general fund made it highly questionable that a federal court could compensate plaintiffs for losses under the UPL at all. *Taylor v. Chiang*, 2007 WL 1628050, at *2 (citing *Edelman v. Jordan*, 415 U.S. 651, 665–67 (1974)). The point applies with full force here. Because the Eleventh Amendment arguably bars a retrospective damages award against the Controller payable from the State treasury, the harm Plaintiffs suffer upon custody, liquidation, and destruction is, by definition, not remediable at law. Even at this early stage, the relevant facts are beyond dispute and establish irreparable harm. Injunctive relief is the only relief available.

### C. <u>The Balance of Equities Is Firmly In Plaintiffs' Favor Because the State Has No Legitimate Property Interest In The Seized Private Property.</u>

The rights of private property owners to their property greatly outweigh the State's interest in using that property as a revenue source while it fails to notify the owner of its possession. Given Defendants' unnoticed seizures of title to property of "known" owners with inadequate notice under the UPL, Defendants have no legitimate interest in the purported "protection" of seized property for the "known"

owner's benefit while Defendants treat the citizens as "unknown" and simultaneously uses the property (and proceeds) for public purposes and structures the scheme to minimize effective reunification. *See Temple-Inland, Inc. v. Cook*, 192 F. Supp. 3d 527, 548 (D. Del. 2016) ("unclaimed property laws were never intended to be a tax mechanism whereby states can raise revenue as needed for the general welfare. States violate substantive due process if the sole purpose of enacting an unclaimed property law is to raise revenue."); *see also Taylor I*, 402 F.3d at 936 ("There is no lack of funding exception to the Due Process Clause."); *Azure Limited v. I-Flow Corp.*, 46 Cal. 4th 1323, 1336 (2009) ("the state has no legitimate interest in receiving and using property that is not unclaimed").

Significantly, Defendants' own fiscal self-interest have incentivized the Controller to administer and enforce this preposterous scheme, which further supports Plaintiffs' request for relief. The Supreme Court has long expressed constitutional "concern with governmental self-interest" when "the State's self-interest is at stake," which requires heightened scrutiny by the Court. *United States v. Winstar Corp.*, 518 U.S. 839, 896 (1996) (quoting *United States Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 26 (1977)). Thus, Defendants will suffer no harm whatsoever from a prohibitive injunction that requires them merely to stop violating the Constitution and to follow the law. Being compelled to comply with the legal requirements of the UPL and the Constitution cannot be deemed a "harm" of any sort; nor can being deprived of illegitimate "revenue" to which the State has no lawful claim. *Taylor I*, 402 F.3d at 931, 936; *Azure*, 46 Cal. 4th at 1336. The Controller is *not* the owner of the property—she is merely a custodial trustee of the true owners' property—which is not the State's "revenue." *Id.*

Thus, the equities are firmly in Plaintiffs' favor.

### D. The Requested Relief Is In The Public Interest.

The requested relief is also in the public interest. The public always has a compelling interest in ensuring that the government abides by the Constitution and

the rule of law. *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("public interest concerns are implicated when a constitutional rights has been violated,… all citizens have a stake in upholding the Constitution"); *see also Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) (the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations"). The UPL endangers the property rights of anyone with private property, including, as shown above, people around the world with no nexus to California whatsoever.

By undermining property rights, the UPL also interferes with the efficient operation of securities markets, which is a disservice to the public interest. The property seized and taken into state custody by Defendants includes unnoticed stock transfers subject to extensive federal oversight and regulation by the Securities & Exchange Commission under the Securities Act of 1933, 15 U.S.C. §§ 77a–77bbb, and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78hh. These statutes are designed "to protect investors" and "to promote ethical standards of honesty and fair dealing"[33]—not to allow states to appropriate the property of unwary investors without adequate notice or disclosures. *See United States v. Naftalin*, 441 U.S. 768, 775 (1979) (observing that the securities laws were meant "to restore the confidence" of investors that their property would be secure). Further, unauthorized stock transfers are prohibited. *See Western Union Telegraph Company v. City of Davenport*, 97 U.S. 369, 372 (1878) (describing the "great principle that no one can be deprived of his property without his assent" when discussing the "unauthorized transfer of stock"); *see also Schneider v. Union Oil Company of California*, 6 Cal. App. 3d 987, 993 (1970) ("the corporation in the instant case committed an unauthorized act in transferring title to plaintiff's stock"). The UPL exacerbates these concerns because it requires the Controller to convert regulated securities into

[33] *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1976)

cash within a fixed 18-to-20-month window without constitutionally adequate pre-deprivation notice to the shareholder (§ 1563(b)), and, as alleged here, Defendant Kroll falsifies the addresses of foreign shareholders in order to effectuate the unauthorized transfers. Defendants' actions frustrate the federal statutory purposes and undermine investor confidence in the security of their property.

### E. <u>The Scope Of The Injunction Should Roughly Track The Order Issued In *Taylor v. Chiang*.</u>

This Court need not write on a blank slate. Another court issued an injunction against the Controller enjoining the very practices at issue here under the previous version of the UPL. *Taylor v. Chiang*, 2007 WL1628050. Plaintiffs respectfully ask this Court to enter relief in materially the same form, and the [Proposed] Order lodged herewith roughly tracks that order.

Importantly, the *Taylor* Court (and those of other Circuits) squarely rejected the argument that an injunction limited to the sale, conversion to cash, and destruction of property is sufficient to prevent irreparable harm. The Controller argued there, as she will inevitably argue here, that the risk identified by the Ninth Circuit was confined to the UPL's policy of immediately selling property upon escheat. The district court disagreed: the Ninth Circuit had cited the sale of property as an example of how plaintiffs could suffer irreparable injury, not as a description of the only way they could be irreparably harmed. *Taylor v. Chiang*, 2007 WL 1628050, at *2. The court further explained that when the Controller takes custody of property under the UPL, even temporarily, certain rights associated with ownership are lost which are not compensable in money damages. *Id*. The district court accordingly enjoined the Controller from taking title to or control of property, as well as from selling or converting property already obtained, until constitutionally adequate notice is provided. *Id*. at *3.

The same result follows here and flows more easily. Where the probability of success on the merits is high, a lesser showing of irreparable harm supports a

broader injunction; in this Circuit that sliding-scale approach survives *Winter* in the form of the "serious questions" test. *All. for the Wild Rockies*, 632 F.3d at 1131–35. Plaintiffs' showing is therefore stronger than in *Taylor v. Chiang*: Plaintiffs allege not merely that the UPL's notice provisions are constitutionally inadequate, but that Defendants affirmatively falsified owner addresses in order to manufacture the jurisdictional predicate for "escheat" and to guarantee that no notice could be delivered to the known owners so that they could earn their 10% of the seizure proceeds. An injunction that reached only the sale and destruction would leave that conduct entirely untouched, because the constitutional injury is complete the moment falsified property is accepted into the Controller's custody.

Plaintiffs ask this Court to adopt the mechanism the Ninth Circuit suggested and the *Taylor* Court imposed: before the restrictions of the injunction may be lifted, the Controller shall submit any proposed new regulations concerning the administration of the UPL to this Court, on notice to Plaintiffs and with an opportunity to be heard, and the restrictions shall be modified or withdrawn only if the Court approves the sufficiency of those regulations. *Taylor v. Chiang*, 2007 WL 1628050, at 4. That mechanism leaves the drafting where it belongs—with the Controller—while ensuring that the violation does not simply resume.

That mechanism is especially apt here. In the nineteen years since *Taylor v. Chiang*, the Controller has not promulgated any regulations governing the claims process at all, in violation of the Administrative Procedure Act, California Government Code § 11340 *et seq*. *See Tidewater Marine W*., *Inc. v. Bradshaw*, 14 Cal. 4th 557, 561 (1996) (agency actions are "void" for failure to adopt written regulations pursuant to public rulemaking under the APA). The claims standards, by which Plaintiff Martim's multiple claims have been denied, are unpublished. A court-approval requirement is the minimum assurance that any new regime will be written down, made public, and measured against the Constitution before Defendants resume taking private property.

## VI. CONCLUSION

For the preceding reasons, the motion for a preliminary injunction should be granted, and this Court should enter an order of prospective declaratory and injunctive relief in the form set forth in the [Proposed] Order concurrently filed with this Motion and the supporting declarations.

Respectfully submitted,

Dated: October 7, 2026

**PALMER LAW GROUP, a PLC**

By: */s/ William W. Palmer*
William W. Palmer

Attorneys for Plaintiffs
*Paul R. Hashim, Karl A. Whitty, U.S. Claims Services, Inc., Edmilson César Martim, Jr., and Class Members*

Dated: October 7, 2026

**LARSON LLP**

By: */s/ Stephen G. Larson*
Stephen G. Larson
Paul A. Rigali
Dana M. Howard
Attorneys for Plaintiffs
*Paul R. Hashim, Karl A. Whitty, U.S. Claims Services, Inc., Edmilson César Martim, Jr., and Class Members*

Dated: October 7, 2026

**SHERNOFF BIDART ECHEVERRIA LLP**

By: */s/ Michael J. Bidart*
Michael J. Bidart
Ricardo Echeverria
Attorneys for Plaintiffs
*Paul R. Hashim, Karl A. Whitty, U.S. Claims Services, Inc., Edmilson César Martim, Jr., and Class Members*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs Paul R. Hashim, Karl A. Whitty, U.S. Claims Services, Inc., Edmilson César Martim, Jr., and Class Members certifies that this brief is 32 pages, excluding the caption, table of contents, table of authorities, signature block and this certification, which complies with the page limit ordered by this Court. ECF No. 20.

Dated: October 7, 2026

**PALMER LAW GROUP, a PLC**

By: */s/ William W. Palmer*
William W. Palmer

Attorneys for Plaintiffs
*Paul R. Hashim, Karl A. Whitty, U.S. Claims Services, Inc., Edmilson César Martim, Jr., and Class Members*

Dated: October 7, 2026

**LARSON LLP**

By: */s/ Stephen G. Larson*
Stephen G. Larson
Paul A. Rigali
Dana M. Howard

Attorneys for Plaintiffs
*Paul R. Hashim, Karl A. Whitty, U.S. Claims Services, Inc., Edmilson César Martim, Jr., and Class Members*

Dated: October 7, 2026

**SHERNOFF BIDART ECHEVERRIA LLP**

By: */s/ Michael J. Bidart*
Michael J. Bidart
Ricardo Echeverria

Attorneys for Plaintiffs
*Paul R. Hashim, Karl A. Whitty, U.S. Claims Services, Inc., Edmilson César Martim, Jr., and Class Members*